# EXHIBIT A

## COMPLAINT
## Case No. 20 TRT 00089 1B

## DISTRICT COURT CIVIL COVER SHEET
### Carson City
County, Nevada

REC'D & FILED

Case No. _____
*(Assigned by Clerk's Office)*

2020 JUL 31 PM 1:44

### I. Party Information *(provide both home and mailing addresses if different)*

| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
|---|---|
| Christopher Watkins, on behalf of himself and all other similarly situated, | Rapid Financial Solutions, Inc., Cache Valley Bank, Axiom Bank N.A. and Does 1 through 10, inclusive |
| Attorney (name/address/phone): | Attorney (name/address/phone): |
| Mark R. Thierman, Joshua D. Buck, Leah L. Jones, Joshua R. Hendrickson 7287 Lakeside Dr. Reno, NV 89511 | |

### II. Nature of Controversy *(please select the one most applicable filing type below)*

#### Civil Case Filing Types

| Real Property | Torts | |
|---|---|---|
| **Landlord/Tenant** | **Negligence** | **Other Torts** |
| ☐ Unlawful Detainer | ☐ Auto | ☐ Product Liability |
| ☐ Other Landlord/Tenant | ☐ Premises Liability | ☐ Intentional Misconduct |
| **Title to Property** | ☐ Other Negligence | ☐ Employment Tort |
| ☐ Judicial Foreclosure | **Malpractice** | ☐ Insurance Tort |
| ☐ Foreclosure Mediation Assistance | ☐ Medical/Dental | ☑ Other Tort |
| ☐ Other Title to Property | ☐ Legal | |
| **Other Real Property** | ☐ Accounting | |
| ☐ Condemnation/Eminent Domain | ☐ Other Malpractice | |
| ☐ Other Real Property | | |

| Probate | Construction Defect & Contract | Judicial Review/Appeal |
|---|---|---|
| **Probate** *(select case type and estate value)* | **Construction Defect** | **Judicial Review** |
| ☐ Summary Administration | ☐ Chapter 40 | ☐ Petition to Seal Records |
| ☐ General Administration | ☐ Other Construction Defect | ☐ Mental Competency |
| ☐ Special Administration | **Contract Case** | **Nevada State Agency Appeal** |
| ☐ Set Aside  ☐ Surviving Spouse | ☐ Uniform Commercial Code | ☐ Department of Motor Vehicle |
| ☐ Trust/Conservatorship | ☐ Building and Construction | ☐ Worker's Compensation |
| ☐ Other Probate | ☐ Insurance Carrier | ☐ Other Nevada State Agency |
| **Estate Value** | ☐ Commercial Instrument | **Appeal Other** |
| ☐ Greater than $300,000 | ☐ Collection of Accounts | ☐ Appeal from Lower Court |
| ☐ $200,000-$300,000 | ☐ Employment Contract | ☐ Other Judicial Review/Appeal |
| ☐ $100,001-$199,999 | ☐ Other Contract | |
| ☐ $25,001-$100,000 | | |
| ☐ $20,001-$25,000 | | |
| ☐ $2,501-20,000 | | |
| ☐ $2,500 or less | | |

| Civil Writ | | Other Civil Filing |
|---|---|---|
| **Civil Writ** | | **Other Civil Filing** |
| ☐ Writ of Habeas Corpus | ☐ Writ of Prohibition | ☐ Compromise of Minor's Claim |
| ☐ Writ of Mandamus | ☐ Other Civil Writ | ☐ Foreign Judgment |
| ☐ Writ of Quo Warrant | | ☐ Other Civil Matters |

*Business Court filings should be filed using the Business Court civil coversheet.*

07/31/2020
Date

Signature of initiating party or representative

*See other side for family-related case filings*

Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
Joshua R. Hendrickson, Nev. Bar No. 12225
joshh@thiermanbuck.com
**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500   Fax. (775) 703-5027

Christian Gabroy (#8805)
Kaine Messer (#14240)
**GABROY LAW OFFICES**
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
Tel (702) 259-7777
Fax (702) 259-7704
christian@gabroy.com
kmesser@gabroy.com

Lance J. Hendron, Esq.
**HENDRON LAW GROUP, LLC**
625 S. Eighth Street
Las Vegas, Nevada 89101
Office: (702) 758-5858
Fax: (702) 387-0034
Email: lance@hlg.vegas

*Attorneys for Plaintiff and the Putative Classes*

REC'D & FILED
2020 JUL 31  PM 1:44
AUBREY ROLLATT
CLERK
BY_____
DEPUTY

## IN THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

## IN AND FOR CARSON CITY

CHRISTOPHER WATKINS, on behalf of
himself and all others similarly situated,

      Plaintiff,

      v.

RAPID FINANCIAL SOLUTIONS, INC.
d/b/a/ ACCESS FREEDOM CARDS;
CACHE VALLEY BANK; AXIOM BANK
N.A.; and DOES 1 through 10, inclusive,

      Defendants.

Case No.: 20 TRT CW 09 9

Dept. No.: #

**CLASS ACTION COMPLAINT FOR
VIOLATION OF:**

**(EXEMPT FROM ARBITRATION
PURSUANT TO NAR 5)**

1.  Electronic Fund Transfers Act (15 U.S.C.
    § 1693)
2.  Nevada Deceptive Trade Practices Act
    (NRS § 598.092(8 and 14) and NRS
    598.0923(3);
3.  Conversion;
4.  Unjust Enrichment; and
5.  Unconstitutional Taking

- 1 -
CLASS ACTION COMPLAINT

COMES NOW Plaintiff Christopher Watkins, on behalf of himself and all others similarly situated brings this Class Action Complaint against Defendants RAPID FINANCIAL SOLUTIONS d/b/a/ ACCESS FREEDOM CARDS, CACHE VALLEY BANK, and AXIOM BANK N.A., as follows:

## INTRODUCTION

1.     This is a class action by a former prison inmate on behalf of himself and all those similarly situated who, upon release from custody, was required to accept the return of his own money in the form of a credit balance on a release debit card issued by Defendants, which was not the functional equivalent of cash or a check because the value of the cards quickly and permanently deteriorated.  Just like the inmates who successfully sued the issuer of a similar release debit card in the recent decision of the Ninth Circuit Court of Appeals in the case of *Brown v. Stored Value Cards, Inc.,* No. 18-35735 (9th Cir. Mar. 16, 2020), Plaintiff alleges that this conduct is a violation of the federal Electronic Fund Transfers Act (15 U.S.C. § 1693(b) hereinafter also "EFTA"), Nevada Deceptive Trade Practices Act (NRS § 598.092(8) and (14), and NRS 598.0923(3), as well as  violation of state common law counts for conversion and unjust enrichment.

2.     Because there was no voluntary consent, there was no agreement based upon the free will of the parties, and any alternative dispute resolution provision in any purported agreement with Defendants is contrary to social policy, unconscionable and therefore void and unenforceable. To the extent that any Defendants claim to be a state actors, then they  have violated the Takings Clauses of the Fifth and Fourteenth Amendment to the United States Constitution and Section 8(2) of Article 1 of the Nevada Constitution.

## JURISDICTION

3.     This Court has original jurisdiction over all Nevada state law claims herein, as this is a class action with claims in excess of 15,000 in the aggregate, and a request for injunctive relief.

4.     This Court has concurrent and/or derivative  jurisdiction over claims of violation of federal Electronic Funds Transfer Act (15 U.S.C. § 1693 *et seq.*, hereinafter the "EFTA")

because they arise from the same transactions or occurrences, or the same set or nucleus of operative facts, as the state law claims alleged herein. The EFTA provides that suit to remedy claims of a violation of the may be brought in this Court, stating at 15 U.S.C. § 1693m(g): "Without regard to the amount in controversy, any action under this section may be brought in any United States district court, *or in any other court of competent jurisdiction*, within one year from the date of the occurrence of the violation." (Emphasis supplied).

5.      To the extent that Defendants may affirmatively claim that they were state actors, then this court has jurisdiction pursuant to 42 U.S.C. § 1983 for claims of violation of the Fifth and Fourteenth Amendment's Takings Clause, as well and Section 8(2) of Article 1 of the Nevada Constitution.  Pursuant to NRS 41.031 *et seq.* there is no sovereign immunity for state actors from the non-constitutional claims as well.

6.      Venue is proper in this District because each Defendant is subject to personal jurisdiction in this District and Plaintiffs charged him fees for using and/or maintaining his "Access Freedom" release debit card within this District, and thus a substantial part of the events or omissions giving rise to the claim occurred within this District.

**PARTIES**

7.      At all times relevant herein, Plaintiff CHRISTOPHER WATKINS is and was a natural born person who was in the custody of the State of Nevada Department of Corrections ("NDOC") as an inmate at Stewart Conservation Camp for almost two years until his release on April 13, 2020, at which time, he returned to the state of Pennsylvania with a debit card.

8.      At all times relevant herein, Defendant RAPID FINANCIAL SOLUTIONS, INC. d/b/a ACCESS FREEDOM CARDS is and was a corporation with its principle place of busines in North Logan, Utah, engaged in the business of issuing debit cards to governmental state and local governmental entities for use by correctional facilities as payment for sums owed to prison inmates during incarceration and upon release.

9.      At all times relevant herein, Defendant CACHE VALLEY BANK is and was a privately held business entity doing business as an FDIC regulated bank with its principle place of business located at 101 North Main, Logan, UT 84321. Upon information and belief,

1  Defendant CACHE VALLEY BANK maintains the master card banking network access
2  connection, holds the pooled account and holds each class member funds as directed by
3  Defendant RAPID FINANCIAL SOLUTIONS, INC.

4       10.    At all times relevant herein, Defendant AXIOM BANK N.A. is and was a
5  nationally chartered community bank headquartered in Central Florida, that provides retail
6  banking services, including checking, deposit, and money market accounts, through 19 branch
7  locations, 17 of which are located inside select Walmart Supercenters.  Upon information and
8  belief, Defendant AXIOM BANK N.A. also maintains the master card banking network access
9  connection, maintains the pooled account and holds class member funds as directed by Defendant
10  RAPID FINANCIAL SOLUTIONS, INC.

11  **FACTS**

12       11.    Over 650,000 prisoners are released from state and federal prisons annually.
13  During the term of their incarceration, many earn wages from working at prison labor camps.  In
14  addition, some inmates have money credited to their trust accounts, referred to as putting money
15  on their "Book" for purpose of buying goods for their use at the prison commissary. Finally,
16  some inmates have had money taken from them at the time of incarceration and this money is
17  held in trust by the prison for the inmate until release.  All these sums are the property of the
18  prisoner and must be returned to the prisoner at the time of the release.

19       12.    Traditionally, when individuals were released from prisons, and other detention
20  facilities, their jailers returned to them any wages earned but unspent during their term in prison,
21  any monies that had accrued in the individual prisoner's trust account (remaining on the books
22  of the commissary), or money taken at the time of incarceration in the form of cash or a check
23  payable upon demand without discount or fee at any bank and/or state charted savings and loan
24  or other financial institution.

25       13.    In many jurisdictions, however, instead of receiving their account balances in cash
26  or check upon release, prisoners are automatically given their account balances in the form of a
27  credit which can only be accessed by use of a prepaid debit cards, sometimes called a prison

28

release card. According to article by NBC News entitled "Inmates Charged Fee After Leaving Jail:"[1]

> With about 650,000 prisoners released from state and federal prisons and an estimated 12-million people processed through local jails nationwide each year, there's a built-in market for these cards. But there's also a cost, one that's usually passed along to the inmates.
>
> "These companies have a literally captive market where prisoners frequently complain of being overcharged, but do not have proper regulatory tools to protect themselves," said Paul Wright at the Human Rights Defense Center. "It would be one thing if people were given the option of cash, a check or a debit card with fees, but there is no consumer choice. I find the whole process offensive and unfair.

14. Defendant RAPID FINANCIAL SOLUTIONS contracts with governmental correctional and detention facilities like the State of Nevada Department of Corrections to provide prepaid card programs for use by the operators of correctional facilities to pay inmates who have earned wages during their term in prison, who have had money deposited in a trust account on their behalf for use at a commissary (money on the inmate's "book"), or who have had cash taken from them at the time of incarceration the money that belongs to the inmate that must be paid to the inmate upon release from custody.

15. Defendant RAPID FINANCIAL SOLUTIONS offers governmental correctional facilities like the State of Nevada, Department of Corrections a method of paying these inmates their money without the expense of handling cash or writing individual checks to the inmate upon his or her release.

16. Defendant RAPID FINANCIAL SOLUTIONS give the correctional facility operators blank plastic debit cards with no value initially, which then is issued to the inmate with a credit balance equal to the amount owed to that inmate upon release.

---

[1] Available at https://www.nbcnews.com/business/consumer/inmates-charged-fee-after-leaving-jail-n329151 (last visited July 22, 2020).

17.     Defendant RAPID FINANCIAL SOLUTIONS in turn contracts with Defendants CACHE VALLEY BANK and/or AXIOM BANK N.A. as an issuing bank for its cards, and MasterCard as the payment network sponsor.

18.     If, at the time of release from incarceration,  the correctional institution has money due the inmate that must be returned to the inmate upon release, the inmate is given an release debit card, which Defendants label the "ACCESS FREEDOM CARD," which is a prepaid debit card loaded with a balance equal to the money that is owed the inmate.  At the time of release, the card is activated and ready for immediate use.

19.     Defendant RAPID FINANCIAL SOLUTIONS, INC, describes this portion of its business on its web pages at https://rpdfin.com/government/ (last visited July 21, 2020) as follows:

### CORRECTION PAYOUTS MADE EASY AND EFFICIENT

With ReleasePay jails can reduce time, cost and workload by turning the manual, time-consuming task of writing checks into an easy automated process, freeing you up to focus on running your correctional facility. Processing jail payments is now easy, secure and streamlined.

ReleasePay helps jail administrators gain greater efficiency across their correctional facility by providing them with a digital money management solution. All inmate data entered at the local level is automatically updated into a secure centralized database, so the commissary records are accurate at all times. Extensive audit records help state auditors maintain control.

20.     Defendants earn revenue from the fees that it charges cardholders. As a result, Plaintiff just like every inmate who is released from custody with an "ACCESS FREEDOM CARD," instead of cash or a check in the amount of money owed, is required to pay fees to Defendants in order to access his or her own money.

21.     While in prison, plaintiff was voluntarily employed by the State of Nevada fighting fires for which he was paid 10 cents of every hour worked.  One of the purposes of this job was to earn "walking money" to be paid when he was released from custody.

22.     At the time of his release in April 2020, Plaintiff had earned and was credited with approximately $400.00.

23.     Rather than provide Plaintiff with his money in cash or in the form of a check payable without discount at any bank, Plaintiff had no choice but to accept in lieu of cash, an "ACCESS FREEDOM CARD" provided by Defendant RAPID FINANCIAL SOLUTIONS. Inc.

24.     Immediately upon release, Plaintiff attempted to withdraw cash money to pay for transportation from the correctional facility using the card for the first time at a convenience store down the street from the prison facility.   For reasons unknown, the card was declined, and Plaintiff was charged a fee.  Plaintiff was unable to use the card for some time after his release, and had no cash or a check he could cash to pay for transportation or other costs of the journey home.

25.     As stated in the fee schedule attached hereto as Exhibit 1, Defendants charge cardholders a $1.50 weekly maintenance fee, first charged only three days after card activation. There is also a $2.75 fee for every ATM withdrawal in addition to any fee charged by the ATM itself. Other fees include a $1.50 fee for each ATM balance inquiry made by the cardholder, and a $2.75 fee for each attempted transaction that was declined at any location (plus whatever fee the ATM itself may charge) and a $2.95 per card for lost or stolen card replacement.  Generally, these fees exceed the fees charged by the card issuer in the case of *Brown v. Stored Value Cards, Inc.*, No. 18-35735 (9th Cir. Mar. 16, 2020).

26.     Defendants can charge and collect these exorbitant fees because their exclusive contracts with state and local agencies shield them from competitive market forces.

27.     Individuals who are released from any NDOC facility have no choice but to accept a "ACCESS FREEDOM CARD" provided by Defendant RAPID FINANCIAL SOLUTIONS. Inc. in lieu of receiving the return of their own money in the form of cash or check.

28.     The inmates do not voluntarily engage the company, enroll in the program, or take any affirmative steps to form any contractual relationship with Defendants herein or MasterCard.

29.     Plaintiff was a captive consumer for Defendants and Defendants took full advantage of Plaintiff's complete lack of bargaining power by requiring Plaintiff to pay various exorbitant and/or unreasonable fees to retrieve his own money.

30.     Of course, Plaintiff would never have agreed to receive his money in the form of the extremely expensive "ACCESS FREEDOM CARD" provided by Defendant RAPID FINANCIAL SOLUTIONS. Inc. if he had been given any choice or bargaining power. Plaintiff never voluntarily consented to any term of any agreement with Defendants nor was there any valid consideration for any such agreement.

31.     But, like the thousands of other former inmates that Defendants charge to spend their own money, Plaintiff had no choice to accept the release debit card and its onerous fees in order to obtain his own money upon release.

32.     Plaintiff and the putative Class represent an involuntary market where consumers have no choice or say in whether they have to use prepaid debit cards to access their own money or not.

33.     Plaintiff and members of Plaintiff class did not agree to any of the terms imposed by Defendants in any contract or writing, including any arbitration provision, since there was no freely given consent, and the consideration was the inmates own money which is inadequate as a matter of law. Any boilerplate contract with Defendants in this case made while the Plaintiff was still in prison is voidable, and hereby voided, on the grounds of duress because a Plaintiff and any class member making the claims here was forced to agree to such agreement by means of a wrongful threat of withholding the inmates own money, while still in the custody of the correctional facility, thereby precluding the exercise of free will necessary to establish consent.

34.     In addition, the terms of any such agreement are communicated to the inmate either simultaneously with the issuance of the card, or afterwards.

35.     The arbitration provisions of the agreement between Defendants herein and inmates was found not to be binding in the case of *Reichert v. Keefe Commissary Network, L.L.C.*, No. C17-5848RBL (W.D. Wash. Oct. 30, 2019).

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

37.     Plaintiff brings this action on behalf of themselves and all other similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of the following classes: The Nationwide Card Class and the Nevada Card Class.

38.     The **Nationwide Card Class** is defined as:

> All persons who, upon release from a jail, prison, or detention facility, were provided with a prepaid card issued by Defendant RAPID FINANCIAL SOLUTIONS or its affiliates, and/or CACHE VALLEY BANK of Utah, or its affiliates, and/or Defendant AXIOM BANK N.A. of Florida, or its affiliates, in lieu of cash or a check for the balance of funds belonging to the inmate at time of release from custody and who were required to pay any fee in conjunction with the use or maintenance of the card except those persons who were released from prison in the State of Washington and who are members of the class certified in the case of *Reichert v. Keefe Commissary Network, L.L.C.*, No. 3:17-cv-05848-RBL (W.D. Wash. May 8, 2019).

39.     The **Nevada Card Class** is defined as

> All persons who, upon release from a jail, prison, or detention facility, within the state of Nevada, and who were provided with a prepaid card issued by Defendant RAPID FINANCIAL SOLUTIONS or its affiliates, and/or Defendant CACHE VALLEY BANK of Utah, or its affiliates, and/or Defendant AXIOM BANK N.A. of Florida, or its affiliates, in lieu of cash or a check for the balance of funds belonging to the inmate at time of release from custody and who were required to pay any fee in conjunction with the use or maintenance of the card.

40.     Plaintiff's situation is similar to all those they seek to represent because Defendants took money from Plaintiff and all other released inmates and provided instead a debit card that was not the functional equivalent of cash or a check because the value of the card quickly and permanently deteriorated do to fees and charges associated with its use and maintenance.

41.     Common questions of fact and/or law exist whether the involuntary taking of money in exchange for a debit card that was not the functional equivalent of cash or a check, but worth less than the money taken from the inmate, 1) constitutes a violation Section 1693l-1 of the Electronic Funds Transfer Act, which prohibits charging service fees to "general-use prepaid

cards," 2) constitutes a violation of EFTA section § 1693i, which prohibits the issuance, absent certain disclosures, of unsolicited validated cards that provide access to a "consumer's account," 3) violates NRS § 598.092 subsections 8 and 14 and NRS 598.0923(3) for all prisoners released form NDOC facilities, 4) constitutes conversion under state common law, and 5) constitutes unjust enrichment under state common law.

42.    To the extent that Defendants plead an affirmative defense of state action, then there is a common question of law and fact of whether they were state actors, and if so, did their actions complained of herein constitute a governmental taking in violation of the Fifth and Fourteenth Amendment of the Constitution.

43.    Upon information and belief, each class is sufficiently numerous because there is more than 1,000 Nevada Card Class members and more than 10,000 Nationwide Class Members within the applicable statute of limitations.

44.    Plaintiffs' claims are typical to those of fellow class members because each class member is and was subject to the same practices, plans, or policies as Plaintiff.

45.    Plaintiff is an adequate representative of the class because 1) Plaintiff will fairly and adequately represent the interests of the Class; 2) Plaintiff is a member of the Class, Plaintiff has issues of law and fact in common with all members of the Class; and 3) Plaintiff does not have interests that are antagonistic to Class members. Plaintiff has retained counsel experienced in large class action and civil rights litigation who are financially able to bear the costs of this litigation.

46.    A class action is superior to other available means for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impractical, and common claims of whether Plaintiffs and Class Members are entitled to compensation for the work activities performed predominate over individual issues. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the expenses and burden of individualized litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to

1    them, while an important public interest will be served by addressing the matter as a class action.

2    Individualized litigation would also present the potential for inconsistent or contradictory

3    judgments.

### FIRST CAUSE OF ACTION

4    Violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq.

5    (On Behalf of Plaintiff and the Nationwide Card Class Against Defendants)

6        47.    Plaintiff re-alleges and incorporates by reference all of the allegations of this

7    Complaint as stated above with the same force and affect as if fully restated herein.

8        48.    The primary objective of the EFTA is to protect consumer rights by providing a

9    basic framework establishing the rights, liabilities, and responsibilities of participants in the

10   electronic fund and remittance transfer systems.

11       49.    Among its consumer protection provisions, the EFTA prohibits the unsolicited

12   issuance to a consumer of an electronic fund transfer card that does not meet all of the EFTA's

13   unsolicited access device criteria. *See* 15 U.S.C. § 1693(i).

14       50.    ETFA Section 1693i prohibits the issuance, absent certain disclosures, of

15   unsolicited validated cards that provide access to a "consumer's account." ETFA § 1693i(c) says

16   that a card is "validated when it may be used to initiate an electronic fund transfer."

17       51.    ETFA Section 1693l-1 prohibits charging service fees to "general-use prepaid

18   cards" unless the card has not been used for 12 months and other requirements have been met.

19   ETFA § 1693l-1(b).

20       52.    A general-use prepaid card is (1) "redeemable at multiple, unaffiliated merchants

21   or services providers, or automated teller machines"; (2) "issued in a requested amount"; (3)

22   "purchased or loaded on a prepaid basis"; and (4) "honored . . . by merchants for goods or

23   services, or at automated teller machines." ETFA § 1693l-1(a)(2)(A). A general-use prepaid card

24   does not include a card that "is not marketed to the general public." Id. § 1693l-1(a)(2)(D)(iv).

25       53.    The "FREEDOM ACCESS' card issued by Defendants RAPID FINANCIAL

26   SOLUTIONS, CACHE VALLEY BANK  and/or AXIOM BANK N.A. are issued to inmates, a

27   very large sub-set of the general population, when inmates are released from jail or prison, and

28   rejoin the general public.

- 11 -

CLASS ACTION COMPLAINT

54. Defendants RAPID FINANCIAL SOLUTIONS, CACHE VALLEY BANK and/or AXIOM BANK N.A. indirectly market the cards to released inmates.

55. Defendants RAPID FINANCIAL SOLUTIONS, CACHE VALLEY BANK and/or AXIOM BANK N.A. are financial institutions as defined by 15 U.S.C. § 1693a (9) because they directly hold accounts belonging to consumers.

56. Defendants RAPID FINANCIAL SOLUTIONS and/or Defendant CACHE VALLEY BANK and/or Defendant AXIOM BANK N.A. violated 15 U.S.C. § 1693(i) by issuing to consumers unsolicited electronic transfer cards that do not meet all of the EFTA's unsolicited access device criteria.

57. By the violations of the EFTA and conduct alleged above, Defendants RAPID FINANCIAL SOLUTIONS and/or Defendant CACHE VALLEY BANK and/or Defendant AXIOM BANK N.A. have caused and continue to cause Plaintiff and the Class damages.

58. Wherefore, Plaintiffs demand of Defendants, and each of them, return of all fees charged to Plaintiff and members of the Nationwide Card Class for use of the ACCESS FREEDOM debit Card, plus the maximum amount of statutory damages pursuant to 15 U.S.C. § 1693m-(a)(2)(b) and (a)(3), together with interest attorneys fees and costs, according to law.

## SECOND CAUSE OF ACTION
Violation of NRS § 598.092 subsections 8 and 14 and NRS 598.0923(3)
(On Behalf of Plaintiff and the Nevada Card Class Against Defendants)

59. Plaintiff re-alleges and incorporates by reference all the allegations of this Complaint above with the same force and affect as if fully restated herein.

60. The Nevada Deceptive Trade Practices Act (hereinafter also "NVDTPA") NRS § 598.092 subsections 8 and 14 provides that "A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she: . . .

    a. Knowingly misrepresents the legal rights, obligations, or remedies of a party to a transaction. (section 8) or

    b. Knowingly takes advantage of another person's inability reasonably to protect his or her own rights or interests in a consumer transaction when such an inability is due to illiteracy, or to a mental or physical infirmity or another similar condition

which manifests itself as an incapability to understand the language or terms of any agreement. (section 14)

61.     Under NRS 598.0923(3), "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly...[v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services." NRS § 598.0923(3).

62.     By the conduct describe above, Defendants and each of them has violated the provisions of Sections 8 and 14 of NRS § 598.092 and NRS § 598.0923(3).

63.     Under the NVDTPA, "[a]n action may be brought by any person who is a victim of consumer fraud." Nev. Rev. Stat. § 41.600(1). A claim under the NVDTPA "requires a 'victim of consumer fraud to prove that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff.'"

64.     Plaintiff and the members of the Nevada Class are each victims of consumer fraud who have suffered an ascertainable loss as a result of Defendants' unlawful trade practices and/or unconscionable tactics.

65.     Defendants' unlawful trade practices and/or unconscionable tactics were willful.

66.     Defendants' unlawful trade practices have caused and continue to cause Plaintiff and the Nevada Class actual damages.

67.     Wherefore, Plaintiffs demand of Defendants, and each of them, return of all fees charged to Plaintiff and members of the Nevada Card Class for use of the ACCESS FREEDOM debit Card, plus triple damages pursuant to NRS 42.005, interest, attorneys fees and costs as allowed by law.

### THIRD CAUSE OF ACTION
Conversion
(On Behalf of Plaintiff and the Nevada Card Class Against Defendants)

68.     Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

69.     Defendants, and each of them, have performed each of the elements of a claim for a common count claim of conversion, which in Nevada, are:

- 13 -
CLASS ACTION COMPLAINT

a.  A distinct and intentional act of dominion by one which is wrongfully exerted over the property of another;

b.  Act committed in denial of, or inconsistent with the rightful owner's use and enjoyment of the property;

c.  Act committed in derogation, exclusion, or defiance of the owner's rights or titled in the property; and

d.  Causation and damages.

70.  Defendants have wrongfully collected fees from Plaintiff and members of the Class and have taken specific and readily identifiable funds from Plaintiff and the members of the Class in payment of these fees in order to satisfy these fees charged unlawfully. Defendants, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the Class, without legal justification, and with full knowledge that the conduct complained of herein was unlawful.  See, e.g. *Reichert v. Keefe Commissary Network, L.L.C.*, No. C17-5848RBL (W.D. Wash. Oct. 30, 2019); *Brown v. Stored Value Cards, Inc*., No. 18-35735 (9th Cir. Mar. 16, 2020).

71.  Defendants continue to retain these funds unlawfully and without the consent of Plaintiff or the Class.

72.  Defendants intend to permanently deprive Plaintiff and the Class of these funds.

73.  These funds are properly owned by Plaintiff and the Class, not Defendants herein, who now claim that they are entitled to their ownership, contrary to the rights of Plaintiff and the Class.

74.  Plaintiff and the members of the Class are entitled to the immediate possession of these funds.

75.  Defendants have wrongfully converted these specific and readily identifiable funds.

76.  Defendants' wrongful conduct is continuing.

77.  NRS § 598.0953 states that: "The deceptive trade practices listed in NRS 598.0915 to 598.0925, inclusive, are in addition to and do not limit the types of unfair trade

practices actionable at common law or defined as such in other statutes of this State." Conversion is an action at common law.

78.     As a direct and proximate result of Defendants' wrongful conversion, Plaintiff and the Class have suffered and continue to suffer damages.

79.     Wherefore, Plaintiffs demand of Defendants, and each of them, return of all fees charged to Plaintiff and members of the Nevada Card Class for use of the ACCESS FREEDOM debit Card, plus triple damages pursuant to NRS 42.005, interest, attorneys fees and costs as allowed by law.

**FOURTH CAUSE OF ACTION**
Unjust Enrichment
(On Behalf of Plaintiff and the Nevada Card Class Against Defendants)

80.     Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint above with the same force and affect as if fully restated herein.

81.     Defendants have been unjustly enriched by their assessment of fees upon Plaintiff and the Nevada Card Class that are unfair, unconscionable, inflated, and oppressive.

82.     The circumstances are such that it would be unjust and inequitable for Defendants to retain the benefit that they unjustly received from Plaintiff and the Nevada Card Class.

83.     NRS § 598.0953 states: "The deceptive trade practices listed in NRS 598.0915 to 598.0925, inclusive, are in addition to and do not limit the types of unfair trade practices actionable at common law or defined as such in other statutes of this State."

84.     Unjust enrichment is actionable at common law.

85.     Plaintiff and the Nevada Card Class have suffered and continue to suffer actual damages as a result of Defendants' unjust retention of proceeds from their acts and practices alleged herein

86.     Wherefore, Plaintiffs demand of Defendants, and each of them, return of all fees charged to Plaintiff and members of the Nevada Card Class for use of the ACCESS FREEDOM debit Card, plus triple damages pursuant to NRS 42.005, interest, attorneys fees and costs as allowed by law.

**FIFTH CAUSE OF ACTION**
Unconstitutional Taking
(On Behalf of Plaintiff and the Nevada Card Class Against Defendants)

87.     Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint as stated above with the same force and affect as if fully restated herein.

88.     Defendants are not acting like an agency of the government in performing the acts described in this complaint.

89.     Notwithstanding, if the Defendants claim to be a state actors, then Defendants are subject to the provision of the Constitution of the State of Nevada for all acts occurring in Nevada, and the United States Constitution.

90.     Section 8, subsections 2 and 3 of Article 1 of the constitution of the state of Nevada states:

> 2. No person shall be deprived of life, liberty, or property, without due process of law.

> 3. Private property shall not be taken for public use without just compensation having been first made, or secured, except in cases of war, riot, fire, or great public peril, in which case compensation shall be afterward made.

91.     A state actor may not deprive any person of property without just compensation and without due process pursuant to the Fifth and Fourteenth Amendment to the United States Constitution and Section 8, subsections 2 and 3 of Article 1 of the constitution of the state of Nevada.

92.     To the extent Defendants may be considered state actors, then they have caused and continue to cause Plaintiff and member of the Nevada Class actual damages by violation of the Fifth and Fourteenth Amendment to the United States Constitution and Section 8, subsections 2 and 3 of Article 1 of the constitution of the state of Nevada.

93.     Wherefore, Plaintiff demands of Defendants, and each of them, return of all fees charged to Plaintiff and members of the Nevada Card Class for use of the ACCESS FREEDOM debit Card, together with interest, attorneys fees and costs as allowed by law.

- 16 -
CLASS ACTION COMPLAINT

## **PRAYER**

**WHEREFORE**, Plaintiff, on behalf of herself and on behalf of the Nationwide Card Class and the Nevada Card Class, prays for the following relief:

1.  An order certifying this case as a class action and appointing Plaintiff and the undersigned counsel to represent the Classes;

2.  Declaration, judgment, and decree that Defendants RAPID FINANCIAL SOLUTIONS, INC., CACHE VALLEY BANK and/or AXIOM BANK N.A. conduct as alleged herein:

    a.  Violates the EFTA;

    b.  Constitutes conversion; and

    c.  Constitutes unjust enrichment;

3.  Declaration, judgment, and decree that Defendants RAPID FINANCIAL SOLUTIONS, INC., CACHE VALLEY BANK and/or AXIOM BANK N.A. conduct alleged herein violates the NVDTPA;

4.  Damages to Plaintiff and the Classes to the maximum extent allowed under state and federal law;

5.  Restitution and/or disgorgement of ill-gotten gains;

6.  An injunction against future violations of the EFTA;

7.  An injunction requiring corrective measures to be taken to prevent Defendants from engaging in the above-described misconduct;

8.  Pre- and post-judgment interest;

9.  Reasonable attorneys' fees;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

10.    Costs and disbursements of the action; and

11.    Such other relief, in law and equity, as this Court may deem just and proper.

DATED this 30th day of July 2020

                                   Respectfully Submitted,

                                   THIERMAN BUCK LAW FIRM

                                   /s/

                                   Mark R. Thierman
                                   Joshua D. Buck
                                   Leah L. Jones
                                   Joshua R. Hendrickson

                                   GABROY LAW OFFICE
                                   Christian Gabroy
                                   Kaine Messer

                                   HENDRON LAW GROUP, LLC
                                   Lance J. Hendron

                                   *Attorneys for the Plaintiff*

**EXHIBIT 1**

**EXHIBIT 1**

# ACCESS FREED⬤M

## GET STARTED
with these options to receive your money.

## Use Your Card
for immediate access to your money.



- Use your card anywhere MasterCard is accepted
- Get cash back when you make a debit transaction

  

- Download the **currencie** app to check your balance and transaction history or register for the options below.

—OR—

## Register Your Card
for additional ways to use your money.

Register online at the website or the back of your card or through the mobile app free of these options below at no cost.

- Move money to a **bank account**
- Send money to **PayPal.**
- Buy **gift cards.**
- Request a **paper check.**



-160 + $\$$25

---

 

### WAYS TO AVOID FEES

Do not use your card to "Pay at the Pump" at stations.

Use cash advance ...

You can run your card as debit ...

Utilize the direct deposit transfer ...

Check your balance online ...

If your card is rejected at an ATM, never attempt over and over again. ...

Watch gratuity ...

Update your temporary PIN before use by ...

To avoid maintenance fees, ...

If you want to split your payment ...

---

# Manage
# Your Money
# Your Way

Check your balance or change PIN. Personal identification numbers three different ways.

- Register online at
  www.accessfreedomcard.com

-OR-

- Download the *currencie* mobile app

-OR-

- Call 877-287-2448

Funds are available immediately once the account has been loaded.

Use your card anywhere MasterCard is accepted to make purchases.

Or register for more options to use your money such as transfer to a bank, PayPal, gift cards, or a paper check.

Download the **currencie** App from the App Store or Google Play Store to check your balance and transaction in store.



App Store for iOS      Google Play Store for Android

CUSTOMER SERVICE
877-287-2448

---

| $1.50* | $0 | $2.75 | N/A |
|---|---|---|---|

## ACUERDO DEL TITULAR

(A partir de junio de 2019)

## ¡ATENCIÓN!

Registre en línea garantizará la seguridad de sus fondos.

Por favor, visite www.accessfreedomcard.com para la protección y los beneficios adicionales tales como: Alertas móvil, 24/7 Monitoreo de transacciones, Protección contra el fraude, y para actualizar a una Tarjeta de batería recargable

| | Tasa semanal | Por compra | Retiro en Cajero Automático | Recarga de efectivo |
|---|---|---|---|---|
| | **$1.50*** | **$0** | **$2.75** | **N/A** |
| Consulta de saldo en cajero automático | | | | $1.50 |
| Servicio al cliente | | | | $0 |
| Inactividad | | | | $0 |
| Cambiaremos otros 2 tipos de tasas: | | | | |
| Rechazo en cajero automático | | | | $2.75 |
| Reemplazo de tarjeta | | | | $2.99 |

* La tarifa comienza 3 días calendario después de la obtención de la tarjeta o 90 días después de la emisión de la tarjeta, lo que ocurra primero.

No arriesga sobregiros/críditos.

Sus fondos se aseguran si se inscriben y son asegurados por la FDIC.

Para obtener información general sobre los cuentos prepago, visite cfpb.gov/prepaid.

Obtenga más información sobre las tasas de la Tarjeta consultando su saldo en la aplicación Genzela, llamando a Servicio al Cliente al 1-877-287-3448 o visitando www.accessfreedomcard.com.

"CISNDOC"

Para conocer los términos y condiciones completos, visite www.accessfreedomcard.com

Arbitration of Disputes.   Except as expressly provided below, any controversy

# CARDHOLDER AGREEMENT
### (Effective January 2019)

This Cardholder Agreement (this "Agreement") sets forth the terms of your prepaid Card. Please read it carefully and retain it for your records. If you do not agree to these terms, do not use the Card; or if you would like to cancel call Customer Service at 1-877-782-2448. Your retention, acceptance or use of the Card will be evidence of your agreement to these terms.

NOTE: THIS AGREEMENT REQUIRES CERTAIN DISPUTES TO BE RESOLVED BY WAY OF BINDING ARBITRATION, RATHER THAN BY JURY TRIAL. THE TERMS OF THE ARBITRATION CLAUSE APPEAR AT THE END OF THIS AGREEMENT.

**Definitions.** In this Agreement, the words "you" and "your" mean the Cardholder. "Bank," "us" and "our" mean Axiom Bank, N.A., the issuer of the Card, or anyone to whom we assign our rights. "Card" means the network branded prepaid Card that is issued to you.

**Consent.** Individuals who believe they have received this card non consensually will be entitled to full refund of any fees charged to the card. Individuals can claim their full balance by visiting dailypay.me or calling the number on the back of the card.

**Identification.** To help the government fight the funding of terrorism and money laundering activities, federal law requires us to obtain, verify, and record information that identifies each person who registers a Card. When you request or agree to register a Card, you authorize the party giving you the Card to provide us with your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents and may use resources such as credit bureaus or other means to verify your identity information.

**Using Your Card.** Your Card is active right now and can immediately be used to access available funds that have been loaded for the Card. You do not need to call us to activate the card. If your find that your Card is not active, please visit the website on the back of your card to activate it.

You may use your Card to purchase goods and services anywhere MasterCard® debit cards are accepted and to access cash at ATMs or financial institutions displaying the MasterCard®, Pulse®, or Maestro® name and/or logo. Each time the Card is used to make a purchase or access cash or to withdraw cash it is important to subtract all charges so that amount (and any applicable fees) against your Card's available balance. You may not give or transfer your Card to another person for their use.

You will be required to input your personal identification number ("PIN") to access funds at ATMs and to purchase goods or services at some point-of-sale ("POS") locations. Keep a record in a secure place of your card and your temporary PIN number. You should promptly change your temporary PIN by calling Customer Service at 1-877-782-2448. You agree not to disclose your PIN to others.

**ATM Receipts.** You can get a receipt at the time you make any withdrawal with any ATM using your Card.

**Balance and Transaction Information.** You can obtain information about the current available balance on your Card and a description of recent transactions by calling Customer Service at 1-877-782-2448, visiting the website on the back of your card, downloading our free "DailyPay" Mobile App or sending a written request to P.O. Box 6425, North Logan, Utah 84341.

**Limitations.** Subject to your available balance, you may use your Card to make withdrawals at ATMs and purchase goods or services up to the aggregate amount of $3,500 per day. You may not conduct more than two ATM or twenty purchase transactions on any single day. For security reasons, there may be times when we further limit these amounts. You may not use your Card for any unlawful purpose or to conduct Internet gambling transactions.

The maximum amount that can be loaded to the Card is $9,700. Interest will not be paid to you for any amount loaded on the Card. The Card is non-reloadable and additional funds other than by the facility that provided the card, if applicable. This means you may purchase goods or services in the total amount available on the credit card, credit line, overdraft protection or revolving account associated with this Card. Your Card is not transferable and may only be used by you.

**FDIC Insurance.** The money credited to your Card will be held in a custodial account at the Bank. Funds in the custodial account are insured by the FDIC to its current maximum.

**Undefined Property.** We may transfer (escheat) your Card balance to the appropriate state if no activity occurs in the Card and you fail to communicate with us regarding your Card within the time period specified by state law. If funds are transferred to the state, you may file a claim with the state to recover the funds.

**Cancellation of this Agreement.** We may revoke or cancel this Agreement and any transaction that we believe may violate the terms of this Agreement or may be illegal. You may cancel your Card by calling Customer Service at 1-877-782-2448.

**We reserve the right** if you decide to cancel or suspend your use of the Card. You agree not to use or allow others to use an expired, cancelled, suspended or otherwise invalid Card. Our cancellation or suspension of Card privileges will not otherwise affect your rights and obligations under this Agreement. If we cancel or suspend your Card privileges through no fault of yours, you will be entitled to a refund of the remaining balance without charge.

---

Online Registration will ensure the security of your funds. Please visit www.axiombank.com for a list of available card locations. For Lost/Stolen Cards or Mobile Alerts, 24/7 transaction M&™ being Fraud Protection, and to Upgrade to a General Purpose Reloadable Bank Card

## ATTENTION!

Use your card and where you see these symbols:

DEBIT   pulse   maestro

**Investigation.** If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**Your Liability for Unauthorized Transfers.** Tell us AT ONCE if you believe your Card or PIN has been lost or stolen. Telephoning is the best way of keeping your possible losses down. You could lose all the money loaded on your Card.

If you are a Registered Cardholder (an individual who has been verified online by providing personal identification information) and tell us within two business days after you learn of the loss or theft of your Card or PIN, you can lose no more than $50 if someone used your Card or PIN without your permission. If you do NOT tell us within two business days after you learn of the loss or theft of your Card or PIN, and we can prove we could have stopped someone from using your Card or PIN without your permission if you had told us, you could lose as much as $500.

Also, if you become aware of or otherwise suspect transactions that you did not make, including those made by Card, PIN or other means, tell us at once. If you do not tell us within 60 days after the transaction is first made available by visiting the website on the back of your card, you may not get back any money you lost after the 60 days if we can prove that we could have stopped someone from taking the money if you had told us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time periods.

**Warning regarding unverified prepaid accounts.** It is important to register your Card as soon as possible. Until you register your account to verify your identity, we are not required to research or resolve any errors regarding your account. Register at the site on the back of your Card. As such, protect your Card as you would your cash. We will not reimburse you for any unauthorized transactions, which occur prior to the time you notify us of the unauthorized activity or have your PIN has been lost or stolen.

**Limited Liability.** UNLESS OTHERWISE REQUIRED BY LAW, WE WILL NOT BE LIABLE TO YOU FOR: DELAYS OR MISTAKES RESULTING FROM ANY CIRCUMSTANCES BEYOND OUR REASONABLE CONTROL, INCLUDING, WITHOUT LIMITATION: ACTS OF GOVERNMENTAL AUTHORITIES, NATIONAL EMERGENCIES, COMMUNICATIONS, WIRE FRAUD, THEFT, FIRE, FLOOD, OR OTHER CATASTROPHE; ANY ELECTRICAL OR MECHANICAL FAILURE OF ANY COMMUNICATION SYSTEM, THE FAILURE OF MERCHANTS TO PERFORM OR PROVIDE SERVICES; COMMUNICATION SYSTEM FAILURES; OR MALFUNCTIONS ATTRIBUTABLE TO YOUR EQUIPMENT, ANY INTERNET SERVICE, OR ANY PAYMENT SYSTEM. IN THE EVENT THAT WE ARE HELD LIABLE TO YOU, YOU WILL ONLY BE ENTITLED TO RECOVER YOUR ACTUAL DAMAGES. IN NO EVENT SHALL YOU BE ENTITLED TO RECOVER ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY OR SPECIAL DAMAGES (WHETHER IN CONTRACT, TORT OR OTHERWISE), EVEN IF YOU HAVE ADVISED US OF THE POSSIBILITY OF SUCH DAMAGES. THIS PROVISION SHALL NOT BE EFFECTIVE TO THE EXTENT OTHERWISE REQUIRED BY LAW. TO THE EXTENT PERMITTED BY LAW, YOU AGREE THAT OUR RESPONSIBILITY FOR ANY AMOUNT LOADED SHALL BE LIMITED TO YOUR BALANCE AS OF SUCH DATE. YOUR ACKNOWLEDGE AND AGREE THAT THE BANK AND SERVICE PROVIDERS SHALL BE LIMITED TO THE TOTAL AMOUNT LOADED ON THE CARD.

**Our Business Days.** Our business days are Monday through Friday, excluding federal and legal banking holidays in the State of Utah.

**Notices.** We may send notices to you at the last postal or email address reflected in our records or as otherwise made available to you. If your email or postal address changes, you agree to notify Customer Service immediately. Failure to do so may result in Card information being mailed to the wrong person or your transactions being declined. You agree to provide notices to us by calling us at 1-877-782-2448 or writing us at Customer Service, P.O. Box 6425, North Logan, Utah 84341.

**FDIC Rapid Financial Solutions to assist us in administering, supporting, and/or marketing the Card program and otherwise performing our obligations under this Agreement.**

**Delay of Rights.** We can waive or delay enforcement of any of our rights under this Agreement without waiving that or any other right.

**No Assignment by You.** You may not assign or transfer the Agreement or any of your rights or obligations under this Agreement. Any attempt to the contrary (such as the grant of a security interest) shall be null and void. This Agreement shall be binding on you, your executors, administrators, and any permitted assigns.

**Change in Terms.** Subject to the requirements of applicable law, we may at any time add to, delete or change the terms of this Agreement by sending you a notice. We will make the change or delete the fees or terms and conditions of expiration. Advance notice may not be given,

---

**Arbitration of Disputes.** Except as expressly provided below, any controversy that arises out of or is related to (a) the Card, (b) your acquisition or use of the Card, (c) this Agreement, whether based on statute, contract, tort or any other legal theory, in which the aggregate amount in controversy for all claimants exceeds $15,000, including interest and attorneys' fees, (any "Claim") will be settled on an individual basis by binding arbitration under this Agreement, subject to the Federal Arbitration Act ("FAA").

Any dispute regarding whether a particular controversy is subject to arbitration will be decided by the arbitrator(s). If any part of the damages or other relief requested is not expressly stated as a dollar amount, the controversy will be a Claim that is subject to arbitration. You and Bank acknowledge and agree that the transactions in the Card program are in interstate commerce, and any controversy that may arise under or relate to this Agreement arises from, or relates to, this Agreement involve "commerce" as that term is defined and used in the FAA.

The arbitration will be administered by the American Arbitration Association (the "AAA") under its Commercial Arbitration Rules (the "Arbitration Rules"). We will tell you how to contact the AAA and how to get a copy of the Arbitration Rules without cost to you upon request. The Arbitration Rules permit you to request deferral or reduction of the administrative fees of arbitration if paying them would cause you a hardship. Any in-person arbitration hearing will be held in Cache County, Utah, where our employees and records of the Card are located. It is within the arbitrator's discretion to order the arbitration to take place by telephone.

Each arbitrator shall be a licensed attorney who has been engaged in the private practice of law or served as a judge. If there is a disagreement regarding the arbitrator, or a retired judge of a court of general or appellate jurisdiction. The arbitration award shall award only such relief as a court of competent jurisdiction could properly award under applicable law, including attorneys' fees if allowed by applicable law or agreement, and may award to the prevailing party all pre- and post-award interest permitted by applicable law. If allowed by applicable law or agreement, arbitrators and the parties' attorneys-client and other privileges that would apply in a court proceeding, will apply in the arbitration. The filing of a demand for arbitration in accordance with the Arbitration Rules will be deemed the commencement of an action for purposes of any applicable statute of limitations. There will be no class Claims—Claims by or on behalf of other possible will not be considered in or consolidated with the arbitration proceedings between you and Bank.

The Agreement does not limit the right of you or us, whether before, during or after the arbitration proceeding, to obtain provisional or ancillary remedies or injunctive or other traditionally equitable relief (other than a stay of arbitration) necessary to protect the rights or property of the party seeking such relief pending the arbitrator's determination of the merits of the Claim or to deem appropriate or exercise self-help remedies, such as the right of set-off. The taking of any of the actions described in the preceding sentence by either party or the filing of a court action by a party shall not be deemed to be a waiver of the right to demand arbitration of any Claim asserted in a counterclaim or the like in response to any such action. This arbitration provision will apply even if the transaction which relates to your relationship with Bank, whether evidenced by this Agreement or otherwise.

You understand, acknowledge and agree that: you have read carefully this provision in which you and Bank have agreed to arbitrate disputes; this provision limits or waives certain of your rights, including the right to bring a court action and to have a jury decide any dispute; that no class action or arbitration discovery may be more limited in arbitration than in court proceedings; and that an arbitrator's decision from an arbitrator's award are more limited than in an appeal from a court judgment; and certain other rights you have in a court proceeding also may not be available in arbitration.

**Questions.** If you have questions regarding your Card, you may call us at 1-877-782-2448 or write to Customer Service, P.O. Box 6425, North Logan, Utah 84341.

When you use your Card to initiate a transaction at certain merchants (e.g., gas stations, hotels, restaurants, and car rentals), the merchant may request confirmation of the Card's validity and authorization for the transaction. Note: The amount may be estimated by the merchant and may exceed the purchase amount that may place a hold on an amount equal to or greater than the estimated transaction amount, even if the excess amount of your ultimate transaction. Any excess will be released later after the transaction is finally settled through the system.

**Your Obligation for Overdrafts.** There is no overdraft/credit feature associated with this card. You agree not to conduct transactions which would cause your Card balance to become negative. You may not use the Card to make a purchase in a transaction for more than your Card's available balance, that the transaction may be declined. If you conduct transactions in an amount that exceeds the balance on your Card, you agree to pay us the overdrawn amount immediately without further demand.

**Merchant Refunds and Disputes.** Depending on the merchant, any refund or credit owed to you with the Card program will be credited in the form of a credit to your Card. You are not entitled to receive a credit in cash.

We are not responsible for the delivery, quality, safety, legality or any other aspect of goods and services that you purchase from others with a Card. All such disputes

| All fees | Amount | Details |
|---|---|---|
| **Maintenance** | | |
| Card activation | $0 | |
| Monthly Account Maintenance | $1.50 | Fee begins 3 calendar days after the card is activated or 90 days after card issuance if not activated. |
| Weekly Account Maintenance | $1.50 | Fee begins 3 calendar days after the card is activated or 90 days after card issuance if not activated. |
| **Get services** | | |
| Point of Sale (POS) transaction | $0 | Per PIN or Signature transaction. Any participating merchant location. |
| Point of Sale (POS) decline | $0 | Per PIN or Signature transaction. Any participating merchant location. |
| Transfer to bank account | $0 | No fee for transferring funds from your card to your bank account. |
| Transfer to check | $0 | No fee for transferring funds from your card and receive a check. |
| Transfer to Paypal | $0 | No fee for transferring funds from your card to your PayPal® account. Registration required. |
| Transfer to Amazon | $0 | No fee for transferring funds from your card to your Amazon® account. Registration required. |
| Cash back at POS | $0 | No fee for requesting cash back at a merchant POS |
| ATM withdrawal | $2.75 | Per transaction. Any location. This is our fee. You may also be charged a fee by the ATM operator. |
| Teller cash advance | $0 | Per transaction. When card is used as teller cash advance at any MasterCard principal financial institution. |
| ATM decline | $2.75 | Per transaction. Any location. This is our fee. |
| **Information** | | |
| Customer service (live agent) | $0 | No fee for calling our customer service line |
| Customer service (automated) | $0 | No fee for calling our automated IVR or using our mobile app. |
| ATM balance inquiry | $0 | No fee for calling our customer service line |
| **Other** | | |
| PIN change | $0 | No fee for changing your card PIN |
| Card replacement | $2.99 | Per card for lost or stolen cards. No fee for expired card replacement. |

*Register your Card for FDIC insurance eligibility and other protections. This card is issued by Axiom Bank, pursuant to license by MasterCard International Incorporated.*

*Your funds will be held at or transferred to Axiom Bank, an FDIC-insured institution. Once there, your funds are insured up to $250,000.00 by the FDIC in the event Axiom Bank fails, if specific deposit insurance requirements are met and your card is registered. See fdic.gov/deposit/deposits/prepaid for details.*

*Contact Royal Financial Solutions by calling 1-877-287-2448, by mail at P.O. Box 6425, Fountain Valley, CA 92708, or visit [website].*