UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHRISTOPHER WATKINS, *et al.*, | Case No. 3:20-cv-00509-MMD-CSD |
| Plaintiffs, | ORDER |
| v. | |
| RAPID FINANCIAL SOLUTIONS, INC., *et al.*, | |
| Defendants. | |

**I.  SUMMARY**

Plaintiff Christopher Watkins seeks to certify a class of people recently incarcerated in Nevada who were required upon release to use prepaid Access Freedom Cards ("Cards"), issued and serviced by Defendants, to access funds they earned or otherwise accumulated while incarcerated, with no alternative as to method of reimbursement. (ECF No. 38 ("Motion").)[1] Because this case meets Federal Rule of Civil Procedure 23's certification requirements, and as further explained below, the Court grants his Motion.

**II.  BACKGROUND**

Watkins challenges Defendants' practices around the issuance and servicing of the Cards. Watkins moves to certify a Nevada-specific class, asserting claims under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1698, *et seq.*, the Nevada Deceptive Trade Practices Act ("NDTPA"), NRS §§ 598.092(8) and (14) and 598.0923(3), conversion and unjust enrichment under NRS § 598.0953, and the Takings Clause of Article I of the Nevada Constitution. (ECF No. 38 at 10.) Additionally, with respect to the EFTA claim, Watkins seeks to represent individuals recently incarcerated in Nevada who

---

[1]Defendants filed a response (ECF No. 55) and Watkins filed a reply (ECF No. 58).

have opted out of a nationwide class certified in another pending action, *Reichert v. Keefe Commissary Network, L.L.C.*, Case No. 3:17-cv-05848-RBL (W.D. Wash. Oct. 20, 2017). (ECF No. 58 at 2 n.2.)

### A. Watkins's Claims

Watkins was incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), housed at the Stewart Conservation Camp facility ("SCC"), from March 2019 until April 13, 2020. (ECF No. 20-3 at 2.) While in custody, Watkins was voluntarily employed as a firefighter and earned $1.00 per hour; $0.10 of his hourly earnings were transferred to his prison trust account. (*Id.*) Watkins's family members also deposited money into the trust account. (*Id.*)

Ten days before his release, Watkins met with his case worker, who instructed him to sign documentation that would close out his trust account. (*Id.*) The case worker notified Watkins that approximately $400.00 in his account would be loaded onto a Card issued by Defendant Axiom Bank, N.A. ("Axiom") and serviced by Defendant Rapid Financial Solutions, Inc. ("Rapid").[2] (ECF Nos. 13-1 at 3-4, 20-3 at 2, 38 at 5-6.) Watkins declares that he was "not told what it was that [he] was signing and was not given an option not to sign," and was "not given an option to receive [his] money by any other means." (ECF No. 20-3 at 2.) Watkins was "not given a brochure or any documentation regarding the Access Freedom Card until after [his] release." (*Id.*) In other words, Watkins "did not ask for or apply for" the Card and did not know that by receiving the Card he "would be potentially bound by a contract with a third party." (*Id.* at 4.) Moreover, the case worker informed Watkins that the Card had been activated and would be given to him on the date of his release. (*Id.* at 3.)

///

///

---

[2]Since September 2018, Axiom and Rapid have contracted to designate Axiom as the issuing bank for the Cards used by NDOC, with MasterCard serving as the payment network sponsor. (ECF No. 13-1 at 3-4.)

On April 6, 2020, NDOC credited $431.20 onto the Card.[3] (ECF No. 13-5 at 2.) Defendant Rapid declares that Watkins activated the Card on April 7, 2020, six days before his release. (ECF No. 13-1 at 6.) Shortly thereafter on April 10, 2020—three days before release—Watkins was charged a weekly account maintenance fee of $1.50. (ECF Nos. 13-5 at 2, 20-3 at 2.)

On April 13, 2020, Watkins was released from NDOC custody and dropped off at a 7-Eleven convenience store in Carson City, Nevada. (ECF Nos. 20-3 at 3, 38 at 6.) He received a Card pre-loaded with his trust account funds, placed within a tri-fold brochure with activation instructions, a Cardholder Agreement, and a standard schedule of fees. (ECF No. 38 at 6, 38-5.) That day, Watkins attempted to withdraw money with the Card at an ATM to purchase a bus pass, but the transaction was declined. (ECF No. 20-3 at 3.) He then went into the 7-Eleven to use a telephone to call the customer service number on the Card. (*Id*.) Watkins was told over the phone that his Card was not activated, but that he could use it in a few minutes. (*Id*.) Watkins's transaction report states that the following amounts were deducted from Watkins's Card on the date of his release: $12.99 at the 7-Eleven, $101.59 at a Save Mart, and $5.73 at Dallas-Fort Worth International Airport. (ECF No. 13-5 at 2.)

Watkins was subject to the Card's fees, which began diminishing his Card balance on April 10, 2020, three days before his release date. (ECF Nos. 13-5 at 2, 20-3 at 3.) Watkins's transaction report shows that a weekly "account maintenance fee" of $1.50 was withdrawn from his account from April 10, 2020, to July 31, 2020.[4] (ECF No. 13-5 at 2.) Moreover, Watkins declares that he "was charged a fee every time [he] swiped the card at an ATM," which "forced" him "to get cash back whenever [he] made a purchase." (ECF

---

[3] A Customer Transaction Report of Plaintiff's Card reflects that on April 6, 2020, NDOC credited $431.20 onto the card and subsequently credited an additional $17.48 onto the Card on May 5, 2020. (ECF No. 13-5 at 2.)

[4] The last account maintenance fee applied to Watkins's account on July 31, 2020, but withdrew only $0.02—not $1.50 as before—because that was the amount remaining on his Card balance. (ECF No. 13-5 at 2.)

No. 20-3 at 3.) After requesting cash back on several in-store purchases, Watkins again contacted the Card's customer service number and asked how to withdraw his remaining funds. (*Id*. at 3-4.) Watkins then learned that the weekly account maintenance fee would apply to his account "until there was a zero balance." (*Id.* at 4.)

### B. Procedural History and Class Definitions

#### 1. Procedural history

Watkins initially filed his class-action complaint on July 31, 2020, in Nevada state district court. (ECF No. 1-2.) Defendants Rapid and Axiom removed.[5] (ECF Nos. 1, 4, 9.) Defendants then moved to compel arbitration, citing the Cardholder Agreement affixed to the Card. (ECF No. 13.) The Court denied Defendants' motion, finding that Watkins had not mutually assented to the Cardholder Agreement and that an unconscionable adhesion contract had been formed. (ECF No. 24.)

The Court then granted the parties' stipulation to allow Watkins to file his first amended complaint ("FAC"). (ECF Nos. 30, 31.) In the FAC, Watkins added Defendant Keefe Commissary Network, LLC ("Keefe"), an operator of commissary stores that, alongside Rapid and Axiom, contracts with NDOC to issue and service the Cards.[6] (ECF No. 32 at 4, 6.)

#### 2. Class action and class certification in *Reichert*

Before Watkins initiated this action, he had been a class member in the *Reichert* action, still pending in the Western District of Washington, challenging the same defendants and Card policies.[7] (ECF No. 38 at 4.) In *Reichert*, the district court

---

[5] Watkins and Defendants Rapid and Axiom later stipulated to dismiss Defendant Cache Valley Bank without prejudice. (ECF No. 12.) The Court granted the stipulation. (ECF No. 15.)

[6] Defendant Keefe answered Watkins's FAC on May 18, 2022, after the Court granted the parties' stipulation to extend Keefe's deadline to respond. (ECF Nos. 36, 37, 39.) The Court hereafter refers to Rapid, Axiom, and Keefe collectively as "Defendants."

[7] The *Reichert* plaintiffs named Cache Valley Bank—not Axiom—as a defendant. However, Axiom plays an identical contractual role in this case, that is, issuing the Cards for NDOC and Rapid.

4

conditionally granted the plaintiff's motion to certify both a nationwide class and Washington subclass of people formerly incarcerated who were issued Cards upon release and not given a choice of reimbursement method.[8] *See Reichert v. Keefe Commissary Network, L.L.C.*, 331 F.R.D. 541, 558-59 (W.D. Wash. 2017) ("*Reichert I*"). Specifically, Watkins had been a member of the certified nationwide class.[9] (ECF No. 38 at 4.) However, Watkins timely and properly opted out of the *Reichert* national class on April 16, 2022. (ECF No. 38-13 at 2.)

### 3.     Proposed and amended class definitions

Watkins moved for class certification on behalf of people formerly incarcerated in Nevada who were also subject to Defendants' Card policies, defining the class as:

> All persons who, upon release from [a] jail, prison, or detention facility, within the state of Nevada, and who were provided with a prepaid card issued by Defendant RAPID FINANCIAL SOLUTIONS or its affiliates, and/or Defendant AXIOM BANK N.A. of Florida, and/or Defendant KEEFE COMMISSARY NETWORK in lieu of cash or a check for the balance of funds belonging to the inmate at time of release from custody and who were required to pay any fee in conjunction with the use or maintenance of the card.

(ECF No. 38 at 4-5.) Defendants oppose certification, arguing that all of Watkins's claims require individualized proof and "depend on each putative class member[']s[ ] individual facts and circumstances." (ECF No. 55 at 4.) Watkins replies in part by amending the

---

[8]The district court granted Reichert's motion for class certification "with respect to the Washington subclass on the condition that Reichert add another named plaintiff who received a cardholder agreement with their release card." *Reichert*, 331 F.R.D. at 558. As for the putative nationwide class, the district court reserved certification to hold further hearings on whether certification was proper. *Id.* at 558-59. On May 28, 2019, the district court certified the nationwide class on the condition that Reichert add another class representative to the suit. (ECF No. 38-3 at 4.)

[9]The certified nationwide class in *Reichert* "focus[ed] only on inmates that were not given an option about how their money was distributed[,]" and the class definition read as follows: "All persons in the United States who, at any time since October 20, 2016, were: (1) taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, (2) entitled to the return of money either confiscated from them or remaining in their inmate accounts when they were released from the facility, (3) issued a prepaid debit card from Keefe Commissary Network, LLC, Rapid Investments, Inc., and/or Cache Valley Bank that was subject to fees, charges, and restrictions and (4) not offered an alternative method for the return of their money." *Reichert I*, 331 F.R.D. at 549.

Nevada class definition to both narrow the timeframe to comply with statutory limitations periods and only include those not given a choice as to method of reimbursement:

> All person[s] who, at any time since July 31, 2016[,] were: (1) released from a jail, detention center, or prison located in the state of Nevada, (2) entitled to the return of money either confiscated from them or remaining in their inmate trust account when they were released, (3) issued a prepaid debit card from Defendant RAPID FINANCIAL SOLUTIONS or its affiliates, and/or Defendant AXIOM BANK N.A. of Florida, and/or Defendant KEEFE COMMISSARY NETWORK and were subject to fees, charges, and restrictions, and (4) not offered an alternative method for return of their money.

(*Id.* at 4 (internal footnote omitted).) Thus, the proposed class is narrower than the class definition in the FAC.

## III.  DISCUSSION

The Court will first decide whether to allow Watkins to modify his proposed class before assessing whether the class is ascertainable. *See Reichert I*, 331 F.R.D. at 550 (allowing plaintiff to redefine his proposed class before assessing whether Rule 23(a) and (b)(3) requirements are satisfied); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) (recognizing the implied prerequisite that a putative class must be ascertainable, *i.e.*, "sufficiently definite"); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (recognizing that "the party seeking certification must demonstrate that an identifiable and ascertainable class exists" before assessing whether the explicit Rule 23 requirements are met).

### A.     Amendment of Watkins's Class Definition

As noted, in his reply brief, Watkins modifies the proposed class to limit class membership in terms of statutory limitation periods and whether members lacked a choice as to reimbursement method. (ECF No. 58 at 4.) The Court allows Watkins to redefine the proposed class.

"Where appropriate, the district court may redefine the class." *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001) (internal citation omitted); *Andersen v. Briad Rest. Grp., LLC*, 333 F.R.D. 194, 207 (D. Nev. 2019) (amending the proposed class *sua sponte* to ensure compliance with Rule 23 requirements). District courts may allow modifications

to a class definition if they "are minor, require no additional discovery, and cause no prejudice to defendants." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590-91 (N.D. Cal. 2010); *accord J.L. v. Cissna*, Case No. 18-cv-04914-NC, 2019 WL 415579, at *5-6 (N.D. Cal. Feb. 1, 2019) (allowing plaintiff to modify the proposed class definition because the new definition did not add a wholly different group of people to the suit and class members all still suffered similar injuries and similar discovery burdens).

Watkins's proposed modification is permissible because he narrowed the class's scope in response to Defendants' opposing arguments, and the revised class definition will not create additional discovery burdens.[10] Initially, Watkins's proposed class did not include a timeframe for claims and did not account for the issue of whether other class members had a real choice as to how they accessed their money upon release. (ECF No. 38 at 4-5.) The proposed modification imposes a July 30, 2016 cut-off date—complying with statutory limitations periods—and limits membership to those who had no real choice as to method of reimbursement.[11] (ECF No. 58 at 4.) As amended, Watkins's proposed class does not add a wholly different group of people and instead narrows the proposed class to better ensure that all class members are similarly injured by Defendants' conduct. *See Reichert I*, 331 F.R.D. at 550 (allowing plaintiff's proposed modification in part because "[t]he modification would not add a wholly different group of people to the case") (quoting *Cissna*, 2019 WL 415579, at *5). Moreover, the proposed modification will not prejudice Defendants by duplicating pre-certification discovery efforts, especially since

---

[10] Watkins initially modified the class in his reply brief, not in his FAC or initial Motion. Courts generally decline to consider significant issues that a party raises for the first time in his reply brief. *See, e.g., United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (noting that courts "ordinarily decline to consider arguments raised for the first time in a reply brief") (internal citation omitted). However, the modification is not troublesome for certification for the reasons provided above. *See Reichert I*, 331 F.R.D. at 550 (allowing plaintiff to redefine his proposed class because "it would not add a wholly different group of people to the case," "would actually narrow the class definition by excluding inmates who were offered a choice between methods of reimbursement," and would not impose additional discovery burdens) (quoting *Cissna*, 2019 WL 415579, at *5)). Thus, the Court accepts Watkins's modification despite his improper procedure.

[11] In his reply, Watkins notes varying statutory time limitations for each claim, ranging from one year under EFTA to four years under NDTPA. (ECF No. 58 at 4 n.7.)

Defendants have already refused to respond to discovery requests about class members other than Watkins himself. (ECF No. 58-1 at 3, 58-2 at 4-20.) *See also id.* (finding "it is appropriate to allow [plaintiff] to redefine the class" because "[t]o the extent the narrowed class definition would require discovery about which facilities offer inmates a choice, Defendants have already refused to respond to discovery requests on this subject").

Accordingly, the Court allows Watkins to redefine the class and will consider the modified proposed class definition to resolve this Motion.

**B.     Ascertainability**

Defendants do not dispute the ascertainability of Watkins's proposed class. (ECF No. 55 (declining to dispute that Watkins has satisfied this requirement).) Nor could they. Watkins has identified easily available, objective criteria from which a class can be ascertained: whether someone was released from detention in Nevada since July 31, 2016; whether upon release they were required to access their funds through Defendants' Cards; whether Defendants charged them recurring fees and other charges; and whether they had a choice as to their method of reimbursement. *See Kristensen*, F. Supp. 3d at 1303 (finding the proposed class ascertainable because "objective criteria determine who are class members—all those who were sent a text message from one of three phone numbers during an approximately one-month period" using data from calling lists and receipts of unauthorized text messages). Because "[i]ndividual mini-trials will not be necessary" to determine these criteria, Watkins has demonstrated that the class is ascertainable. *See id.*

**C.     Rule 23(a) Requirements**

Having determined Watkins's proposed class is ascertainable, the Court must evaluate whether the class meets the four Rule 23(a) prerequisites for certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 350-51 (2011) (noting that "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," and listing "the Rule's four requirements" as numerosity,

commonality, typicality, and adequacy of representation) (internal citations and quotation marks omitted). Watkins satisfies all four prerequisites.

### 1. Numerosity

Rule 23(a)(1)'s numerosity requirement means that "the difficulty or inconvenience of joining all members of the class makes class litigation desirable." *Acuna v. S. Nev. T.B.A. Supply Co.*, 324 F.R.D. 367, 380 (D. Nev. 2018) (internal citations omitted). "Generally, courts have held that numerosity is satisfied when the class size exceeds forty members." *Andersen*, 333 F.R.D. at 202 (internal citations omitted). But the analysis "requires examination of the specific facts of each case and imposes no absolute limitations." *Acuna*, 324 F.R.D. at 380 (internal citations omitted). When considering whether joinder is practicable, courts may evaluate whether the proposed class members are known and identifiable, the "geographical diversity of class members," and the "ability of individual claimants to institute separate suits." *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *vacated on other grounds, sub nom. Cnty. of Los Angeles v. Jordan*, 459 U.S. 810 (1982) (internal citation omitted).

Watkins estimates the class will comprise at least 6,000 individuals over any given year. (ECF Nos. 38 at 12, 38-7 at 3.) This figure is based on NDOC's estimate of 500 releases per month on average. (ECF No. 38-7 at 2-3.) Defendants do not contest that Watkins satisfies the numerosity requirement. And even if this figure was an overestimate, joinder of this many class members—most of whom lack the resources necessary to sue individually—would clearly be impracticable.[12] *See, e.g., Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 646-47 (W.D. Wash. 2007) (finding joinder of "at least 3,000" class members impracticable). Because the class is so large in number and individual claimants lack resources to bring separate suits, the fact that most class members are easy to locate as Nevada residents does not weigh as heavily. *See Jordan*, 669 F.2d at 1319-20 (finding joinder impracticable in large part because the class was "large in numbers" and, to a

---

[12]Many class members lack the financial resources to sue individually because they were just released from custody and, when incarcerated, they likely only earned $1.00 or less per hour, as Watkins did as a firefighter at SCC.

9

lesser extent, due to "other indicia of impracticability" such as small-value individual claims and "unnamed and unknown future [class members]"). Watkins therefore satisfies the numerosity requirement.

### 2.     Commonality

Because Watkins seeks certification under Rule 23(b)(3), the Court will assess Rule 23(a)(2) commonality within Rule 23(b)(3)'s predominance inquiry under Rule 23(b)(3) below. If Rule 23(b)(3) predominance is established, the commonality requirement is inherently satisfied. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997). Like commonality, "[p]redominance requires at least one common question." *Kristensen*, 12 F. Supp. 3d at 1304 (internal citation omitted). But predominance also requires that the common questions outweigh the noncommon, individualized questions. *See id.*

### 3.     Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation and quotation marks omitted). Because typicality is a "permissive" standard, claims need not be absolutely identical; they need only be "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Defendants argue in pertinent part that Watkins is atypical because he has "unique circumstances and motivations" and most class members "will have agreed to an enforceable arbitration agreement." (ECF No. 55 at 19.) According to Defendants, Watkins's atypicality stems from his unique experience with NDOC, which "forc[ed] him to take the release card and possibly activat[ed] it before [Watkins] received the Cardholder Agreement." (*Id.* at 18.) Defendants further argue that the Court will have to

engage in an "individualized inquiry . . . to determine whether each class members' situation rendered the Cardholder Agreement unconscionable."[13] (*Id.*)

Defendants' argument is unpersuasive. Determining the validity of arbitration agreements for each class member does not defeat typicality. As in Watkins's own case, the validity of arbitration agreements for other class members would be determined under the same source of law—Nevada law—and involve a small group of state agencies, standardized documentation, and similar procedures for members' release. Further, Watkins's claims stem from the same conduct that has similarly injured other class members, *i.e.*, Defendants' issuance of Cards that class members must use upon release from Nevada detention facilities, all subject to a fee schedule and arbitration agreements. *See Hanon*, 976 F.2d at 508. The facts underlying Watkins's claims are sufficiently typical of the putative class. Like other putative class members, Watkins was recently released from a Nevada detention facility, had his funds loaded onto a Card managed by Defendants, had no choice as to the reimbursement method, and was subject to Defendants' fees. (ECF Nos. 38 at 14, 58 at 5, 8, 58-5 at 14.) Accordingly, Watkins satisfies Rule 23(a)(3)'s typicality requirement.

### 4. Adequacy of representation

The adequacy of representation—both by Watkins and proposed class counsel—is assessed under Rule 23(a)(4) and Rule 23(g). *See Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. 2014) (noting that a "named plaintiff's and class counsel's ability to fairly and adequately represent unnamed [plaintiffs]" are "critical

---

[13]As support, Defendants cite *Reichert v. Rapid Invs. Inc.*, 826 F. App'x 656 (9th Cir. 2020), where the Ninth Circuit vacated and remanded the district court's denial of the defendants' motion to compel arbitration against a second named plaintiff. (ECF No. 55 at 19.) *See also Reichert v. Keefe Commissary Network, L.L.C..*, Case No. C17-5848RBL, 2019 WL 7833109 (W.D. Wash. Oct. 30, 2019) ("*Reichert II*"), *vacated and remanded sub nom. Reichert v. Keefe Commissary Network, LLC*, 826 F. App'x 656 (9th Cir. 2020). On remand, the district court again denied defendants' motion to compel. *See Reichert v. Keefe Commissary Network LLC*, 542 F. Supp. 3d 1133 (W.D. Wash. 2021) ("*Reichert III*"). However, because *Reichert II* and *Reichert III* compared the factual circumstances and "individualized inquiries" of two named plaintiffs (*i.e.*, class representatives), and did not compare the circumstances of a named plaintiff to those of absent class members, these decisions do not change the Court's typicality analysis.

11

requirements in federal class actions under Rules 23(a)(4) and (g)") (internal citations omitted). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

Defendants argue that Watkins is an inadequate class representative because some class members may prefer using the Card over other forms of reimbursement (*e.g.*, check, cash), creating an intra-class conflict. (ECF No. 55 at 19-21.) The Court rejects this argument. The possibility that some class members may have preferred using the Card does not create an intra-class conflict defeating certification. Defendants' Cards impose fees on all class members, regardless of their preferred reimbursement method. Even if some class members favored using the Card, they still had no choice but to use the Card and pay fees for using it—far from profiting or "deriv[ing] a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class." *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) (internal citation and quotation marks omitted). Moreover, Watkins declares he will represent the interests of all other class members, and he states he is unaware of any conflicts of interest with other class members. (ECF Nos. 38 at 14-15, 58 at 8-9, 58-5 at 20.) Watkins is thus an adequate class representative.

As to the adequacy of proposed class counsel, the Court finds they satisfy both *Hanlon* factors. Watkins has shown that class counsel is adequate because they have extensive experience in class-action litigation and do not have apparent conflicts of interest with purported class members. (ECF Nos. 38 at 15, 38-1 at 4-6, 38-9, 38-10, 38-12 at 5-6.) Defendants also do not dispute the adequacy of Watkins's proposed class counsel. (ECF No. 55 at 19-21 (lacking any argument about class counsel's adequacy).)

Watkins thus satisfies the adequacy requirement under Rules 23(a)(4) and 23(g).

### D. Rule 23(b)(3) Requirements

#### 1. Predominance

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Watkins seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members" must "predominate over any questions affecting only individual members," and that the class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (quoting Fed. R. Civ. P. 23(b)(3)).

"The predominance inquiry under Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Id.* at 557 (quoting *Amchem*, 521 U.S. at 623). "It 'presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2),' and focuses on whether the 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication'; if so, 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1022).

"[I]mportant questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions . . . of considerably less significance." *Id*. (quoting *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016)). An action may be considered proper under Rule 23(b)(3) even if just one common question involving a central issue predominates. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal citation omitted).

The Court identifies several common questions driving this litigation that predominate: (1) whether unilaterally transferring class members' funds to a Card activated before the person's release violates EFTA; (2) whether Defendants' notices on the Cards and accompanying documentation satisfied EFTA's disclosure requirements

before imposing inactivity fees; (3) whether unilaterally transferring class members' funds to a fee-laden Card is an unfair or deceptive trade practice, as defined by Nevada statute; (4) whether transferring class members' funds to the Cards without their consent and imposing fees onto those funds constitutes wrongful dominion over another's property; (5) whether transferring class members' funds to fee-laden Cards without their consent confers a benefit to Defendants at the class members' expense; and (6) whether the Card's fees constitute a taking of private property. (ECF Nos. 38 at 13, 58 at 10-13.)

Defendants dispute whether common issues predominate for each of Watkins's claims. (ECF No. 55 at 14-18, 22-24.) However, Watkins's modified class lends itself to common issues that predominate for each claim. All putative class members were incarcerated when they received the Cards, had their Cards activated upon release, and had no choice as to the method of reimbursement. Further supporting a finding of predominance is evidence that Defendants provided standardized tri-fold brochures, in which they placed the Cards. (ECF No. 38-5.) The common issues all implicate Defendants' standardized practices, and the Court need not rely so much on individualized evidence from specific agencies or class members.

Defendants also argue in pertinent part that individual issues predominate as to contract formation because other class members may have formed valid arbitration agreements under the unique circumstances of their release. (ECF No. 55 at 22-23.) Defendants cite Watkins's individual circumstances and contract defenses (*i.e.*, unconscionability) that the Court previously discussed when it resolved Defendants' motion to compel arbitration. (ECF No. 24.) But this argument is is unpersuasive because, like Watkins himself, the entire class is subject to the same source of law (*i.e.*, Nevada contract law), a small group of state agencies, and common circumstances surrounding members' release and standardized arbitration agreements. As such, the question of whether a contract formed when an incarcerated person was given a Card with no other reimbursement choices will produce common answers.

Because the common issues outweigh individual issues and are conducive to efficient, class-wide adjudication, Watkins establishes Rule 23(b)(3) predominance. Consequently, Watkins also satisfies commonality under Rule 23(a)(2). *See Amchem*, 521 U.S. at 609 (recognizing that commonality "is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions") (internal citation and quotation marks omitted).

### 2. Superiority

To determine superiority, the Court balances the factors in Rule 23(b)(3)(A) through (D). These factors are: (1) class members' interest in controlling separate actions; (2) the existence and extent of any current litigation; (3) the desirability of the forum; and (4) the difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

The first factor weighs heavily in favor of certifying a class. Because class members likely had low account balances subject to small, recurring fees, most likely have small value claims worth too little money to pursue individually. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001), *amended on denial of reh'g by* 273 F.3d 1266 (9th Cir. 2001) ("When damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.") (internal citation omitted); *Amchem*, 521 U.S. at 621 (recognizing the "core" class action policy of "overcom[ing] the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights") (internal citation and quotation marks omitted). Moreover, the class members have all been recently incarcerated and likely lack the legal training and resources to prosecute their individual claims. *See Scott v. Quay*, 338 F.R.D. 178, 191 (E.D.N.Y. 2021) (finding superiority satisfied in part because "the proposed class is composed of incarcerated or recently incarcerated people, who are likely to lack the resources or legal training to vindicate their rights") (citing *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 813 (1985)).

As for the second factor, the fact that another class action against Defendants is pending in another federal district court does not defeat superiority. Said otherwise, the


Court rejects Defendants' argument that certifying Watkins's putative class while the *Reichert* action proceeds creates "a threat of inconsistent adjudications." (ECF No. 55 at 26-27.) While Reichert involves a nationwide class and Washington subclass asserting both federal and state-law claims, the class in this action is limited to members recently incarcerated in Nevada primarily asserting Nevada-law claims. The classes in each action accordingly assert claims under distinct sources of law, so the "clear threat of multiplicity and a risk of inconsistent adjudications" is minimal. *See Zinser*, 253 F.3d at 1191 (internal citation omitted). Beyond the *Reichert* action, Defendants provide no evidence showing that other individuals have filed suit or otherwise have an interest in pursuing individual litigation. For these reasons, the second factor weighs in favor of granting class certification.

The third and fourth factors also weigh in favor of granting class certification. Concentrating litigation in this Court makes sense. And because all class members were recently incarcerated in Nevada, this forum is convenient for them. Managing a class action will likely be feasible and efficient. With minimal need for discovery, Watkins can easily identify class members through objective criteria, such as time of incarceration and release, detention facility, and whether that facility used the Cards for reimbursement. Consequently, the Court finds the superiority requirement satisfied.

In sum, Watkins's proposed class is ascertainable and complies with the prerequisites of Rule 23(a). Watkins also complies with the requirements for pursuing a class action under Rule 23(b)(3). Consequently, the Court grants Watkins's Motion with respect to each of his claims. The Court appoints Watkins's counsel as class counsel due to their experience, knowledge, and resources. *See* Fed. R. Civ. P. 23(g)(1).

///

///

///

///

///

**IV.     CONCLUSION**

The Court notes the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Watkins's motion for class certification (ECF No. 38) is granted.

DATED THIS 15th Day of November 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE