**THIERMAN BUCK, LLP**
Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar. No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar. No. 13161
leah@thiermanbuck.com
325 W. Liberty Street
Reno, Nevada 89501
Tel. (775) 284-1500
Fax. (775) 703-5027

**GABROY MESSER LAW OFFICE**
Christian Gabroy, Nev. Bar No. 8805
christian@gabroy.com
Kaine Messer, Nev. Bar No. 14240
kaine@gabroy.com
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
Tel (702) 259-7777
Fax (702) 259-7704

**HENDRON LAW GROUP, LLC**
Lance J. Hendron, Nev Bar No. 11151
Lance@hlg.vegas
625 S. Eighth Street
Las Vegas, Nevada 89101
Office: (702) 758-5858
Fax: (702) 387-0034

*Attorneys for Plaintiffs*

/ / /

/ / /

/ / /

**KAEMPFER CROWELL**
Robert McCoy, No. 9121
Ryan M. Lower, No. 9108
Sihomara L. Graves, No. 13239
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135
Telephone: (702) 792-7000
Facsimile: (702) 796-7181
Email: rmccoy@kcnvlaw.com
Email: rlower@kcnvlaw.com
Email: sgraves@kcnvlaw.com

**STINSON LLP**
George Verschelden (pro hac vice)
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
Telephone: (816) 691-3382
Facsimile: (816) 412-9344
Email: george.verschelden@stinson.com

*Attorneys for Defendants Rapid*
*Financial Solutions, Inc., Axiom Bank N.A.,*
*and Keefe Commissary Network, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER WATKINS, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>RAPID FINANCIAL SOLUTIONS, INC. d/b/a ACCESS FREEDOM CARDS; AXIOM BANK N.A.; KEEFE COMMISSARY NETWORK, LLC, d/b/a ACCESS SECURE RELEASE; and DOES 1-50,<br><br>      Defendants. | Case No.: 3:20-cv-00509-MMD-CSD<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Plaintiff CHRISTOPHER WATKINS ("Plaintiff"), by and through his counsel of record, and Defendants RAPID FINANCIAL SOLUTIONS, INC. d/b/a ACCESS FREEDOM CARDS, AXIOM BANK N.A., and KEEFE COMMISSARY NETWORK, LLC ("Defendants") (collectively, the "Parties"), by and through their undersigned counsel of record hereby move this honorable Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order:

    (1)    Preliminarily approving the class action settlement between Plaintiff and Defendants;

    (2)    Preliminarily certifying the Rule 23 Class for purposes of settlement;

    (3)    To the extent the Court deems a hearing on the Joint Motion for Preliminary Approval of Class Action Settlement, set a hearing as soon as practicable;

    (4)    Approving the manner and form of Notice and proposed distribution plan to class members; and

    (5)    Set a final approval hearing for the first week of April 2025 or on a date soon thereafter at the convenience of the Court.

This motion is based on the following Memorandum of Points and Authorities in support thereof, the Settlement Agreement and exhibits thereto attached and filed herewith as Exhibit 1

at ¶ 4 to the Declaration of Leah L. Jones, Esq., (hereinafter "Jones Dec.") including Exhibit 2, the [Proposed] Preliminary Approval Order, and the Declaration of Christopher Watkins submitted in support of this Motion, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Dated: November 22, 2024

THIERMAN BUCK, LLP

*/s/ Leah L. Jones*
Joshua D. Buck
Leah L. Jones

*Attorneys for Plaintiffs and all others similarly situated.*

KAEMPFER CROWELL

*/s/ George Verschelden*
Robert McCoy, Nev. Bar No. 9121
Ryan M. Lower, Nev. Bar No. 9108
Sihomara L. Graves, Nev. Bar No. 13239

STINSON LLP
George Verschelden (pro hac vice)

*Attorneys for Defendants*

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND OVERVIEW OF SETTLEMENT TERMS

Plaintiff Christopher Watkins and Defendants Rapid Financial Solutions, Inc., d/b/a Access Freedom Cards, Axiom Bank N.A., and Keefe Commissary Network, LLC ("Defendants") (collectively, the "Parties") seek preliminary approval of this class action settlement ("Settlement") pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff and Defendants participated in the Court ordered pretrial settlement conference with the Honorable Magistrate Judge Denney where, after extensive discussions, the Parties reached a proposed settlement through arms-length negotiations. (ECF No. 109.)

The Parties have come to a settlement in this action for a non-reversionary total maximum settlement amount of $815,000.00 to be paid to all participating class members.

All of the terms of the Settlement[1] have been agreed upon as follows:

- Approximately $215,000.00 in estimated settlement funds to the Class;[2]

- Approximately $75,000.00 in Settlement Administrator's reasonable fees and expenses approved by the Court;

- Up to $15,000.00 as Case Contribution Award to Plaintiff Christopher Watkins;

- Up to $500,000.00 in attorneys' fees; and

- $10,000.00 in costs.

*See* Exhibit 1, "Settlement" §§ 1.3, 1.14, 1.15, 1.16, 8.2, 12.1-3, 14.1.4; Jones Dec. ¶ 21.

To promote a more effective administration of Notice and to accommodate the Parties' individual needs, the Parties have worked together to obtain the Court's preliminary approval of the settlement as expeditiously as possible. To that end, the Parties do not request a preliminary

---

[1] This Motion incorporates by reference the definitions in the Settlement Agreement between Plaintiff and Defendants, and terms used herein shall have the same meaning as set forth in the Settlement Agreement, hereinafter "Settlement" or "SA" attached as Exhibit 1 to the Declaration of Leah L. Jones, hereinafter "Jones Dec." ¶ 4.

[2] The dollar amounts provided are approximations based on the pending approval by this Court of Class Counsel's fees and costs, the Settlement Administrator's fees, as well as this Court's approval of the Class Representative's Case Contribution Award. *See* Jones Dec. ¶ 21.

approval hearing.[3]  The Parties have attached a proposed Order Granting Preliminary Approval as Exhibit 2, to the Jones Dec., reflecting this request.

## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This is a FRCP 23 certified class action to recover damages for prepaid debit card fees charged to inmates who were released from a Nevada jail, detention center, or prison facility and were required to take Defendants' Access Freedom Card upon release in order to receive the balance of their inmate trust accounts.  These prepaid debit cards are loaded with the inmates' own funds from monies confiscated upon incarceration, wages earned during incarceration, and/or unused funds sent to the inmate by friends/family members for use at a commissary.[4]  Any balance of the inmate trust account must be returned to the individual upon their release from custody.  *Id.*, p. 1:22-23.

The original complaint was filed on July 31, 2020, in the First Judicial District Court, State of Nevada, in and for Carson City against Defendants Rapid Financial Solutions, Inc., d/b/a Access Freedom Cards ("Rapid"); Cache Valley Bank; Axiom Bank, N.A.; and Does 1 through 10.  Defendants removed to this Court on September 8, 2020.  *See* ECF No. 1.  The Parties stipulated to dismiss Cache Valley Bank without prejudice, which was granted by the Court, on September 30, 2020.  *See* ECF No. 15.  Plaintiff's operative First Amended Complaint ("FAC") alleged five causes of action: (1) Violation of the Electronic Fund Transfer Act (15 U.S.C. § 1693); (2) Violation of the Nevada Deceptive Trade Practices Act (NRS § 598.092(8) and (14) and NRS 598.0923(3)); (3) Conversion; (4) Unjust Enrichment; and (5) Unconstitutional Taking.  *See* ECF No. 32.  The FAC updated the caption, removed Cache Valley Bank as a Defendant, and added Keefe Commissary Network, LLC d/b/a Access Secure Release ("Keefe") as a Defendant.  *Id.*

---

[3] To the extent the Court deems a hearing on preliminary approval unnecessary, the Parties jointly request that the Court decide the Joint Motion for Preliminary Approval of Class Action Settlement on the papers and set a hearing for final approval the first week of April 2025 or a date soon thereafter at the convenience of the Court.

[4] *See* ECF No. 105, p. 2:23-26, Order, hereinafter referred to as "MSJ Order", granting in part and denying in part cross-motions for summary judgment and reciting undisputed facts.

On November 15, 2022, the Court granted Plaintiff Watkins' motion for FRCP 23 class certification. *See* ECF No. 65 at p. 6:3-7, adopting the modified class definition set forth in ECF No. 58 at p. 4:12-17; *see also* Settlement at "Recitals" paragraph 1.

A stipulated Protective Order was granted on August 23, 2022. (ECF No. 60.) The discovery period ended March 10, 2023. *See* ECF No. 67, ¶ G. Plaintiff Watkins timely disclosed his expert on damages. Defendants did not provide an expert disclosure. Plaintiff Watkins sat for deposition on June 30, 2022. *See* ECF No. 93-5. Plaintiffs took the FRCP 30(b)(6) depositions of Defendant Rapid as well as Defendant Keefe prior to the close of discovery. *See* ECF No. 93-6 and 93-7, respectively. The Parties exchanged written discovery, including propounding and responding to Requests For Production and Interrogatories, resulting in multiple hundreds of pages of documents specific to the use of Access Freedom Card in Nevada jails, detention centers, and prisons that contracted with Defendants.

Between March 2023 and November 2023, the Parties filed dueling motions for summary judgment. Also at that time, the *Reichert v. Keefe Commissary Network, et al.*, lawsuit in the U.S. District Court for the Western District Washington at Tacoma, Case No. 3:17-cv-05848-BHS (hereinafter "*Reichert*") settled, and a preliminary approval hearing was set. The *Reichert* lawsuit alleged similar claims specific to Defendants' prepaid release card. *See* Settlement at "Recitals" paragraph 5.

On November 6, 2023, this Court granted Defendants' motion to stay ("Stay") pending settlement approval in the *Reichert*, up to February 16, 2024. *See* ECF Nos. 87 and 89. By operation of the Stay, the Parties' motions for summary judgment and Plaintiffs' motion to strike were "denied without prejudice and with leave to refile within 30 days of the stay being lifted." *See* ECF No. 87 at p. 6:12-16.

On December 19, 2023, final approval of the Settlement in *Reichert* was granted. *See* ECF No. 88-1. The *Reichert* Settlement Nationwide Class was defined as: "All persons in the United States, who, at any time since October 20, 2016, were: (1) taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, (2) entitled to the return of money either confiscated from them or remaining in their inmate accounts when they

were released from the facility, (3) issued a prepaid debit card from Keefe Commissary Network, LLC, Rapid Investments, Inc. and/or Cache Valley Bank that was subject to fees, charges, and restrictions and (4) not offered an alternative method for the return of their money." *See* ECF No. 83-1, *Reichert* Settlement Agreement, at §1.10.  On December 19, 2023, final approval of the Settlement in *Reichert* was granted.  *See* ECF No. 88-1.  The *Reichert Settlement* at § 2 and § 8 provided for an effective date of January 18, 2024.  As a result, any Class Member in this case who meets the Class definition and received a release card between January 18, 2024, to judgment herein has a valid claim against Defendants in the instant case.  Also, by operation of the *Reichert* Settlement, Plaintiff Watkins and all Nevada Class Members who have claims between July 31, 2016, and October 20, 2016, still have valid claims against Defendants.  Additionally, Plaintiff Watkins and any Nevada Class Members who opted out of the *Reichert* Settlement still have valid claims against Defendants.

The *Watkins* Parties refiled their cross-motions for summary judgment, and briefing was completed on April 22, 2024.  On August 26, 2024, this Court issued an Order granting in part and denying in part the Parties' motions.  In the MSJ Order, the Court made the following rulings. *See* ECF No. 105, MSJ Order; *see also* Settlement at "Recitals" paragraph 6.

First, Defendant Keefe's motion for summary judgment was denied based on the Court's holding that Keefe is subject to the EFTA because Keefe is "any person" who "directly or indirectly holds an account belonging to a consumer." *Id.,* pp. 8-9, *citing* 12 C.F.R. §1005.20(d) and 12 C.F.R. §1005(2)(i), respectively; *id*.

Second, Defendants knowingly violated EFTA §1693l-1 by imposing "service fees in the form of periodic fee, charge, or penalty for holding or use of" the unsolicited Access Freedom Cards. *Id.*, p. 8:22-24 and 14-15 *citing* 15 U.S.C. §§ 1693l-1(a)(3), (b)(1)-(2), and 12 C.F.R. § 1005.20(a)(6); *id*.

Third, Defendants are liable pursuant to NDTPA §598.0923(1)(c) vis-á-vis EFTA § 1693l-1.  The Court also held that through NDTPA § 598.0923(1)(c), Plaintiffs have a private right of action to challenge the EFTA violations because each illegal service fee 'directly harmed' him by taking $1.50 from his account." *Id.*, pp. 19-20; *id*.

Fourth, Plaintiff's claims for conversion, unjust enrichment, and unconstitutional takings were not appropriate for summary judgment. *Id.*, pp. 20-25; *id.*

Fifth, the Court granted Defendants' motion for summary judgment against any members of the Nevada class who were members of the *Reichert* class settlement. *Id.* at 8.

Finally, the Court ordered the Parties to participate in a pretrial settlement conference with the Honorable Magistrate Judge Denney. *Id.* The Parties participated in a video settlement conference on October 2, 2024, resulting in the proposed Settlement Agreement now before the Court. *See* ECF No. 109; *see also* Settlement at "Recitals" paragraph 7.

For the purpose of settling this case, the Parties stipulate and agree to the certification of the following Settlement Class:

> All persons who received a release card between July 31, 2016 and October 20, 2016, or between January 18, 2024 to the present, or opted out of the *Reichert v. Keefe* Settlement, and were: (1) released from a jail, detention center, or prison located in the State of Nevada, (2) entitled to the return of money either confiscated from them or remaining in their inmate account when they were released, (3) issued a prepaid debit card from Defendant Rapid Financial Solutions or its affiliates, and/or Defendant Axiom Bank N.A. of Florida, and/or Defendant Keefe Commissary Network and were subject to fees, charges, and restrictions, and (4) not offered an alternative method for the return of their money.

*See* Settlement Agreement, §§ 1.5, 1.9; Jones Dec. at ¶ 23.

## III. SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

The Parties' Settlement provides for significant monetary recovery on behalf of the Class and releases from the Class only those claims arising out of the facts, circumstances, and occurrences alleged in the Complaint. *See* Settlement § 3.1. Further, the Settlement sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement. *Id.,* generally.

### A. The Recovery.

The Parties have come to a non-reversionary settlement in this action for a total maximum settlement amount of $815,000.00.

All of the terms of the Settlement have been agreed upon as follows:

- Approximately $215,000.00 in estimated settlement funds to the Class;[5]
- Approximately $75,000.00 in Settlement Administrator's reasonable fees and expenses approved by the Court;
- Up to $15,000.00 as Case Contribution Award to Plaintiff Christopher Watkins;[6]
- Up to $500,000.00 in attorneys' fees;[7] and
- $10,000.00 in costs.

*See* Exhibit 1, "Settlement" §§ §§ 1.3, 1.14, 1.15, 1.16, 8.2, 12.1-3, 14.1.4; Jones Dec. ¶ 21.

Subject to Court approval, Defendants agree to pay a Maximum Settlement Amount of $815,000.00 to cover all payments arising from this Settlement. *See* Settlement §§ 1.16, 8.2, 9.2. Settlement Class Members who submit a timely electronic claim form shall be eligible to recover a Settlement Share of the Settlement Fund in accordance with a plan of allocation based on the total fees charged to the individual plus three (3) times those fees. *Id.,* § 9.2. Should the Settlement Fund after the deductions as set forth in Section 9.1 be insufficient to pay each individual Class Member 100% of his or her fees plus three times the fees, the individual Class Member shall receive a pro-rata settlement share that is based on a comparison of the total amount of fees paid by all Class Members with the amount of individual fees paid by each individual Class Member. *Id.*

Any Settlement Funds, as set forth in Sections 9.1 and 9.2, that remain from uncashed checks after 90 days will revert to the State of Nevada unclaimed property fund. *Id.,* § 9.4. Upon Court approval, any funds that remain in the Settlement Fund after all payments determined by Sections 9.1 and 9.2 have been mailed to Class Members who submitted valid claims shall be paid equally to the Northern Nevada Legal Aid for Inmate Rights and the Southern Nevada Legal Aid earmarked for former incarcerated individual's assistance. *Id.*

---

[5] *See supra* note 2.

[6] *See supra* note 3.

[7] *See supra* note 4.

The Settlement Administrator shall be responsible for issuing appropriate tax forms arising from the administration of the Settlement Fund. *Id.*, §§ 8.3, 9.1, 14.1.3. Each valid Class Member claimant assumes full responsibility and liability for any taxes owed on their settlement payment. *Id.*, §§ 8.3, 9.1.

**B.     The Release.**

The Settlement provides that, in exchange for the good and valuable consideration set forth therein, all Participating Class Members shall waive any and all claims, rights, demands, liabilities, and causes of action of every nature and description that are alleged or could have been alleged in the Action, whether known or unknown, against Defendants and the Released Parties based on the facts alleged in the Action. *Id.* §§ 3-4.

**C.     The Settlement Mechanism.**

The Parties have agreed to use a third-party Settlement Administrator, Phoenix Class Action Administration Solutions ("Phoenix"), to administer the claims process. *Id.,* § 1.15, 14. The Settlement provides for the Settlement Administrator to send out a postcard notice directing Class Members to a dedicated website that explains the terms and conditions of the Settlement to all Class Members, including an electronic claim form. *Id.* §§ 1.10, 14.1.2-3; Jones Dec. at ¶¶ 30-34. A copy of the postcard Notice to be approved by the Court and sent to class members is attached as Exhibit A to the Settlement (hereinafter "Postcard/Publication Notice.") A copy of the text to be included on the website to be approved by the Court is attached as Exhibit B to the Settlement (hereinafter "Longform Notice.") A copy of the text of the electronic claim form to be approved by the Court and sent to class members is attached as Exhibit C to the Settlement (hereinafter "Claim Form.") In addition, due the Parties anticipation that Class Member contact information may be incorrect even after the Claims Administrator performs "skip traces" the Settlement sets forth that Postcard Notice publication will be published in two separate weeks during the Notice period in the newspapers with the greatest circulation in Northern Nevada and Southern Nevada. *Id.* ¶ 1.10. To request exclusion from the Settlement, a Class Member must opt out of the Settlement by submitting a written request electing to exclude himself or herself from the Settlement as set forth in the Settlement Agreement and in the Notice. *Id.,* § 6.

Following the mailing of the Postcard Notice, class members then have sixty (60) days to file an electronic claim, request to exclude themselves / Opt-Out, or comment on or object to the Settlement. *Id.* §§ 6.1, 7.2. 91.

The Settlement further provides that, following the notice period, the Court will hold a final "fairness" hearing to provide final review and approval of the Settlement. *Id.* § 2.4. The Longform Notice advises class members about the fairness hearing and their opportunity to attend the hearing and make their views known. *Id.,* Exhibit B, Longform Notice.  At the fairness hearing, the Parties will address any issues raised by class members or the notice process itself, and the Court will have a second opportunity to review the settlement in full.

## IV.    THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT

FRCP 23(e) provides that settlement of the claims of a certified class is subject to the court's approval. In general, settlement of class actions is favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

Procedurally, the reviewing court's evaluation is conducted in two stages. *Alberto*, 252 F.R.D. at 658. At the first stage, the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. *Id.* (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) *(*"Manual for Complex Litigation"*)* (summarizing "preliminary fairness review"). Stage two is the fairness hearing, which is set for a time after notice has been provided to the class and class members have had an opportunity to submit claims, comments, or objections to the proposed settlement or to opt out of it, and the court reaches a final determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. *Id.* at 659 (citations omitted).

Here, because the Parties' Joint Motion initiates the first stage of the Court's evaluation of the Settlement, Plaintiffs submit that: (A) the Class should be certified; (B) the Settlement

should be preliminary deemed fair, reasonable, and adequate; and (C) notice should be sent out as set forth in the Settlement.

### A.    The Proposed Settlement Class.

Pursuant to the Settlement, the Parties seek to certify the following class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure:

> All persons who received a release card between July 31, 2016 and October 20, 2016, or between January 18, 2024 and the present, or opted out of the *Reichert v. Keefe* Settlement, and were: (1) released from a jail, detention center, or prison located in the State of Nevada, (2) entitled to the return of money either confiscated from them or remaining in their inmate account when they were released, (3) issued a prepaid debit card from Defendant Rapid Financial Solutions or its affiliates, and/or Defendant Axiom Bank N.A. of Florida, and/or Defendant Keefe Commissary Network and were subject to fees, charges, and restrictions, and (4) not offered an alternative method for the return of their money.

*See* Settlement Agreement, §§ 1.5, 1.9.

### B.    The Proposed Settlement Should be Preliminarily Approved.

In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Speed Shore Corp., v. Denda,* 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."). It is within the broad discretion of the trial court to approve a class action settlement. *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982). The approval of a class action settlement takes place in two stages: preliminary approval and final approval. *West v. Circle K Stores, Inc.,* No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006). Preliminary approval of a class action settlement and notice to the class is appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. FRCP 23(e)(2); *Bellinghausen v. Tractor Supply Co.,* 303 F.R.D. 611, 619

(N.D. Cal. 2014) (citing *Cruz v. Sky Chefs, Inc.,* No. C-12-02705 DMR, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing." *See In Re M.L. Stern Overtime Litigation*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. April 13, 2009) (quoting Manual on Complex Litigation Fourth § 21.632 (2004)). During the preliminary approval process, the Court simply determines "whether there is any reason to notify the class members of the proposed class settlement and to proceed with the fairness hearing." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. If there are no obvious deficiencies, and the settlement falls into the range of possible approval, it should be preliminarily approved. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1057 (9th Cir. 2008); *Alaniz v. California Processing, Inc.,* 73 F.R.D. 269, 273 (C.D. Cal. 1976).

In this matter, an expeditious decision on the papers would promote a fair, effective, and efficient administration of the Notice and is in line with the past practice of this Court. While a hearing is required for final approval of a potential Settlement, no such hearing is required at the earlier preliminary approval stage. *See*, *e.g.*, *Nelson v. Wal-Mart Associates, Inc.*, Case No. 3:21-cv-00066-MMD-CLB (August 15, 2023 Order Granting Motion for Preliminary Approval of Class and Collective Action Settlement); *DeWeese v. ITS National, LLC*, Case No. 3:18-cv-00375-MMD-WGC (March 20, 2019 Order Granting Preliminary Approval of Class Action Settlement). As set forth below, the proposed Settlement satisfies the standard for preliminary approval.

     **1.**     **The Settlement Falls Within the Range of Possible Approval Given the Strengths and Weaknesses of the Claims and Defenses.**

To grant preliminary approval, this Court must decide that the Settlement falls within the approved range for preliminary approval. *Zepeda*, 2015 WL 6746913, at *4; *Fraley*, 2012 WL 5838198, at *1 n.1; *Tableware*, 484 F. Supp. 2d at 1079.  To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement[.]" *Tableware*, 484 F.Supp.2d at 1080. In making a determination of whether the Settlement is adequate and reasonable, the Court must ultimately balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel ..." *Hanlon*, 150 F.3d at 1026.

Here, the Settlement represents a significant recovery on behalf of the Class, given the risks associated with this case. *See* Jones Dec. ¶¶ 24-26.  Class Counsel represents that they have conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of the claims against Defendants, including, but not limited to: (i) speaking with putative class members; (ii) reviewing relevant documents including the Access Freedom Card disclosures, Defendants' agreement with the Nevada jails, detention centers, and prisons that use the Access Freedom Card for return of inmate trust account balances; (iii) researching the applicable law and the potential defenses; (v) developing the arguments in opposition to Defendants' motion to compel arbitration, developing argument to support class certification and motions for summary judgment; and (vi) advocating for the rights of the putative class in this Court, as well as through a motion to intervene and objection in *Reichert* that was ultimately denied. *Id.,* ¶¶ 7-8, 11-20.  Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement is fair, reasonable, and adequate and that it is in the best interest of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendant, trial risk, and appellate risk. *Id.*

Defendants deny any liability or wrongdoing of any kind associated with the claims alleged and contend that, but for the Settlement, this Litigation is not appropriate for class

treatment pursuant to the FRCP 23 or any other federal or state rule, statute, law, or provision. *See* Settlement, Paragraphs 4 and 8, § 5. Defendants continue to assert that the Litigation fails to meet the prerequisites necessary for class action treatment under applicable law. *Id.* Defendants further assert that they have complied with all applicable provisions of federal or state statutory and common law. *Id.* Defendants further state that, despite its good-faith belief that it is not liable for any of the alleged claims, and despite its good-faith belief that certification is not appropriate, Defendants will not oppose the District Court's certification of the Settlement Class contemplated by this Agreement solely for purposes of effectuating this Settlement. *Id.*

Thus, the Settlement represents a compromise between experienced counsel for Plaintiff and Defendants based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective position. *See* Settlement, § 5.1; Jones Dec. ¶ 26.

### 2. All four criteria of FRCP 23(a) are met.

***FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.*** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, the settlement Class consists of approximately 9,688 individuals. Plainly, the numerosity criterion is satisfied. *See* Jones Dec. at ¶¶ 21, 25.

***FRCP 23(a)(2): There are questions of law or fact common to the Class.*** The commonality requirement is construed liberally. *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial issues of law or fact but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Plaintiff and Class Members assert common factual and legal questions, which include whether Defendants knowingly violated EFTA §1693l-1 through imposing "service fees in the

form of periodic fee, charge, or penalty for holding or use of" the unsolicited Access Freedom Cards; whether Defendants are also liable pursuant to NDTPA §598.0923(1)(c) vis-á-vis EFTA § 1693l-1; and whether Defendants have directly harmed Class Members though the imposition of service fees for use of the Access Freedom Card.  *See* ECF No. 105, MSJ Order.

Based on these common issues, this criterion is met. For purposes of approving this Settlement only, Defendants do not oppose Plaintiff's assertion that sufficient commonality exists.

**FRCP 23(a)(3): The claims or defenses of the representative parties are typical of the claims or defenses of the class.** Like commonality, the typicality standard is applied "permissive[ly]." *See Staton,* 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied if the representatives' claims are "'reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Id.*

Here, the claims or defenses of Class Representative Plaintiff Watkins is typical of the claims or defenses of the class because all Class Members were individuals formerly incarcerated in a Nevada jail, detention center, or prison who had a balance of their own money in their inmate trust account at the time of release, were required to take an Access Freedom Card to access that money, and were charged fees to use the funds loaded onto the prepaid release card.  Accordingly, Plaintiff Watkins has asserted the same alleged EFTA and NDTPA violations as all other members of the Class.  Thus, his claims are typical to those of the Class.

**FRCP 23(a)(4): The representative party will fairly and adequately protect the interests of the class.** Courts have interpreted this requirement as posing two questions: (1) whether either the named plaintiff or their counsel has any conflicts of interest with other class members, and (2) whether the named plaintiff and their counsel will vigorously prosecute the action on behalf of the class. *See id.* (*citing Hanlon* and other cases).

Here, Plaintiff Watkins shares with absent Class Members an interest in recovering damages from Defendants based on his allegations that the use of the Access Freedom Card to return inmate trust monies violated the federal EFTA and the NDTPA.  And Plaintiff's counsel has extensive experience in class action litigation, and the proposed settlement was reached only

after arm's-length direct settlement discussions through the pretrial settlement conference with the Honorable Magistrate Denney. *See* Jones Dec. ¶¶ 6-8, 20.

     **3.**         **The criteria of FRCP 23(b)(3) are met.**

To certify a class under FRCP 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class and that a class action is the superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3).

***The predominance requirement is met***. The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case, and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001) *cert. denied,* 534 U.S. 973 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

The universal question, in this case, is whether the Defendants violated federal or state law in operating a release card program in which funds were returned to released individuals via release cards with associated fees. This conduct raises questions of liability under the EFTA uniform among the Class Members. The same is true for claims under the NVDTPA. The transactions are fixed and uniform among the class members: money is obtained from the Class Members and returned to them only in the form of a prepaid debit card with restrictions and fees, and Class Members do not have a choice on the means of return of their own money upon release. Accordingly, the predominance requirement is met.

***The superiority requirement is met.*** Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 614 (C.D. Cal. 2005). The superiority inquiry focuses on promoting the interests of "efficiency, consistency, and ensuring that class members actually obtain relief." *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 701 (N.D. Ga. 2001). A proper class action prevents identical issues from being

"litigated over and over [,] thus avoid[ing] duplicative proceedings and inconsistent results" and helps class members obtain relief when they might be unable or unwilling to individually litigate an action for financial reasons or for fear of repercussion. *Id.* The Parties submit that the situation here is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class member would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985)). In such a situation, the superiority requirement is "easily satisfied." *Id.* Because the sums per Class Member are relatively small, the Plaintiff's litigation costs are high, and Defendants' alleged conduct is uniform, a class action is superior to filing 9,688 individual actions concerning the same facts and legal issues.

For purposes of approving this Settlement only, Defendants do not oppose Plaintiff's assertion that the requirements of Rule 23(b)(3) are satisfied.

### C.    The Proposed Settlement Is Fair, Reasonable, and Adequate.

The *Manual for Complex Litigation* § 21.62 identifies several factors that courts may weigh in determining whether a settlement is fair, reasonable, and adequate (FRCP 23(e)(2)), summarizing the inquiry as follows: Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process. *Id.* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937,944 (9th Cir. 2003); *see also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness, and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.* § 21.633 at 321. The Parties submit that all inquiries are preliminarily satisfied as follows:

### 1.    The Settlement Is Fair.

**Fairness of distribution among Class Members.** A plan of distribution that compensates class members based on the type and extent of their injuries is generally considered reasonable. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro-rata share' to the class members based on the extent of their injuries.") (Internal citation omitted.).

Here, after accounting for all anticipated fees, costs, and case contribution award requested herein, each of the 9,688 Class Members who submit a claim will receive the total fees charged to the individual plus three (3) times those fees. *See* Settlement, ¶¶ 9.1, 9.2; Jones Dec. ¶ 25.  Should the Settlement Fund, after the deductions as set forth in Section 9.1, be insufficient to pay each individual Class Member his or her fees plus three times the fees, the individual Class Member shall receive a pro-rata settlement share that is based on a comparison of the total amount of fees paid by all Class Members with the amount of individual fees paid by each individual Class Member.  *Id.,* § 9.2; Jones Dec. ¶ 25.  The payouts to Class Members will either: (1) equal

100% Class Members fees plus the NDTPA treble damages, or (2) if based on a pro-rata share, will be a fair and reasonable means to calculate settlement shares because Class Members who paid more fees will receive a larger payout. *See* Jones Dec. at ¶ 25.

**Fairness of proposed attorneys' fees.** The allocation of total settlement funds between Class Members and Class Counsel is also fair, in that the Settlement provides for Plaintiffs' counsel to seek no more than $500,000.00, which is less than their lodestar and was reached and agreed upon through the assistance of the Honorable Magistrate Denney during the settlement conference. *See* Settlement, § 12. The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Furthermore, the Longform Notice clearly sets forth Class Counsel's attorneys' fees request. *See* Exhibit B at § III.A. In addition, Plaintiff will include an analysis of the fees request in the motion or final approval.

**Fairness of proposed Case Contribution award for Named Plaintiff Watkins.** The principle of fairness is also well-served by the case contribution award proposed for Plaintiff Watkins. Mr. Watkins, a formerly incarcerated individual, sought out legal assistance regarding the unfair fee-laden prepaid release card he was forced to take when he was released from prison and has provided invaluable assistance to his counsel over the past four-plus years. *See* Declaration of Christopher Watkins, hereinafter Watkins Dec. at ¶¶ 4-14. He agreed to act on behalf of his fellow released individuals in hopes of recouping at least some of the money leftover in their inmate trust accounts that was eaten up by these fees. *Id.,* ¶¶ 8, 13. Mr. Watkins answered and explained in great detail questions about how inmate trust accounts are funded and used, the inmate trust account process throughout an individual's incarceration, including the inmate release process, as well as details and circumstances regarding the use of the release card once the former inmate tries to access and use their own money. *Id.,* ¶¶ 6-13. Mr. Watkins also provided disclosures of thirty-three (33) pages of documents specific to his trust account, his release from prison, and Defendants' release card. *Id.,* ¶¶ 9-10. Mr. Watkins also responded to twenty-two (22) Requests to Produce and twenty-four (24) Interrogatories, provided a sworn declaration, sat for deposition, was present for the settlement conference, and reviewed the

complaint and settlement documents. *Id.,* ¶¶ 12-14. Additionally, after receiving a notice regarding the *Reichert* case, Mr. Watkins opted out and agreed to act as a potential intervenor on behalf of the Nevada Class Members. *Id.* ¶ 13. In recognition of this time-consuming and valuable role that class representatives play in class action litigation, service payments are recognized as serving an essential function in promoting class action settlements. Indeed, in *League of Martin v. City of Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. *Id.* at 1024. Accordingly, the proposed case contribution payment is fair.

### 2. The Settlement Is Reasonable.

At $815,000.00, the proposed Settlement is reasonable. This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands. Instead, Class Members are eligible for individual financial benefits of the fees they were accessed plus three times those fees, or if the Settlement Fund is not sufficient to pay out 100%, each Class Member will receive a pro-rata return of the fees actually charged for use of the release cards. *See* Settlement, ¶¶ 9.1, 9.2; Jones Dec. ¶ 25. The payouts to Class Members will either: (1) equal 100% Class Members fees plus the NDTPA treble damages, or (2) if based on a pro-rata share, will be a fair and reasonable means to calculate settlement shares because Class Members who paid more fees will receive a larger payout. *See* Jones Dec. at ¶ 25. These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.

This conclusion is reinforced by considering such factors as the risk of no recovery after trial and the possibility of additional appellate proceedings by Defendants. Of particular relevance to the reasonableness of the proposed Settlement are the numerous potentially dispositive defenses advanced by Defendant including, among other things, the arguments that Plaintiff and the Class did not suffer any damages, and if they did, the claims are individualized

and, therefore, not susceptible to class treatment; that the federal claims are barred by the applicable statute of limitations; the applicability of penalties for the alleged violations; and that the jails, detention centers, and prisons controlled the means of disbursement of the inmate trust funds.  Given the significant legal and factual uncertainty relating to these defenses, the $815,000.00 Settlement represents a reasonable recovery based on the alleged violations. *See* Jones Dec. ¶¶ 24-26.

Furthermore, while Class Counsel believes that Plaintiffs' claims are meritorious, they are experienced class action litigators and understand that the outcome of trial and any attendant appeals are inherently uncertain, as well as likely to consume many more months or years of litigation. *Id.*  Having reviewed relevant legal arguments, counsel for the Parties—all experienced class action litigators well versed in the EFTA and NDTPA—arrived at a reasonable resolution through a protracted arm's-length direct negotiation process with the Honorable Magistrate Judge Denney. *Id.*

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. *Officers for Justice*, 688 F.2d at 625.  The Court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g.*, *Young v. Katz,* 447 F.2d 431, 433–34 (5th Cir. 1971).  That this is a class action further amplifies the economies of time, effort, and expense achieved by the Settlement.  The Settlement, on the other hand, provides Class Members substantial, prompt, and efficient relief. The Settlement in this case is, therefore, consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases).

Here, the Settlement represents a compromise between experienced counsel for Plaintiff and Defendants based upon each Party's honest assessment of the legal and factual strengths and weaknesses of their respective position.  After accounting for all anticipated fees, costs, and case contributions requested herein, each of the 9,688 Class Members who submit a claim will receive the total fees charged to the individual plus three (3) times those fees. *See* Settlement, ¶¶ 9.1, 9.2;

Jones Dec. ¶ 25.  Should the Settlement Fund, after the deductions as set forth in Section 9.1, be insufficient to pay each individual Class Member his or her fees plus three times the fees, the individual Class Member shall receive a pro-rata settlement share that is based on a comparison of the total amount of fees paid by all Class Members with the amount of individual fees paid by each individual Class Member.  *Id.,* § 9.2; Jones Dec. ¶ 25.  The payouts to Class Members will either: (1) equal 100% Class Members fees plus the NDTPA treble damages, or (2) if based on a pro-rata share, will be a fair and reasonable means to calculate settlement shares because Class Members who paid more fees will receive a larger payout.  *See* Jones Dec. at ¶ 25.  This conclusion is reinforced by considering such factors as the risk that class certification may not remain though trial or might be significantly smaller than proposed; and the time, expense, and complexity of trial itself.  Defendants assert that they did not violate the EFTA or the NDTPA, release card recipients did not suffer any damages, statute of limitations issues, the propriety of penalties for the alleged violations, and lack of control over the means of disbursement of the inmate trust funds.  Indeed, the claims and defenses at issue in this case would likely result in appellate proceedings depending on the outcome of the pending trial.  Ultimately, there were significant remaining risks for both Parties, and the Parties' Settlement represents a more than adequate and reasonable compromise that falls within the range necessary to support preliminary approval and notification to members of the potential Class for their consideration and response. *See* Jones Dec. ¶¶ 24, 26.

### 3.    The Settlement Is Adequate.

As previously mentioned, in a somewhat similar class action, the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover." *Local Joint Executive Bd.*, 244 F.3d at 1163.

The recovery provided through the Settlement is reasonable, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and

elimination of risk, the parties each give up something they might have won had they proceeded with litigation...." *Officers for Justice,* 688 F.2d at 634 (citation omitted). Accordingly, a settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). An additional consideration is that a settlement provides for payment to the class now rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Here, considering the payouts to Class Members will either: (1) equal 100% Class Members fees plus the NDTPA treble damages, or (2) if based on a pro-rata share, will be a fair and reasonable means to calculate settlement shares because Class Members who paid more fees will receive a larger payout, the present value of the Settlement sum, the actuality of an upcoming trial, and likelihood of appellate proceedings in the absence of a settlement, and the risks that the Class might not have prevailed at trial, it is no exaggeration to predict that without using the class action process, the relief that members of the Class were likely to achieve individually ranged from negligible to zero. Consequently, the $815,000.00 Settlement satisfies the criterion of adequacy. *See Manual for Complex Litigation* § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

### D.    The Notice Adequately Informs Class Members of the Settlement.

"The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *See Sinanyan v. Luxury Suites Int'l, LLC,* 2018 WL 815551, at *2 (D. Nev. Feb. 8, 2018), *citing* FRCP 23(e)(1). For purposes of this rule, the court shall direct to members of class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. *Id.* What is "the best notice practicable under the circumstances" and what constitutes "reasonable effort" is a determination of fact to be made in the individual litigation. *See In Re "Agent Orange" Product Liability Litig.,* 100 F.R.D. 718, (E.D.N.Y. 1983), *cert. denied* 100 F.R.D. 735, *mandamus denied* 725 F.2d 858, *certiorari denied* 104 S. Ct. 1417, 465 U.S. 1067, *affirmed* 818 F.2d 145, *certiorari denied* 108

S. Ct. 695, 484 U.S. 1004, *on remand* 689 F. Supp. 1250.  Although notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  This rule's "reasonable effort" standard of giving notice to the members of the class encompasses individual notice, publication in newspapers, or a combination of both.  *See Cohen v. Dist. Of Columbia,* 59 F.R.D. 84, 91 (D.C.D.C. Oct. 18, 1972); *see also Anderson v. Davis Wright Tremaine LLP*, 2023 WL 6003862, at *12 (D. Or. Sept. 5, 2023), *report and recommendation adopted*, 2023 WL 11918036 (D. Or. Dec. 14, 2023) (finding notice by mail, publication, and website was fair, reasonable and adequate to notify class, *citing Ciuffitelli v. Deloitte & Touche LLP,* 2019 WL 1441634, *20 (D. Or., March 19, 2019).

Here, the Settlement sets forth the Notice process and includes both a mail and a publication component.  *See* Settlement, ¶ 1.10; Jones Dec., ¶ 30.  The Notice Postcard will be mailed to each Class Member's last known address based on Defendants' records, and the Claims Administrator will perform a skip trace on all return postcards. *See* Jones Dec., ¶ 31.  In addition, the Notice Postcard will be publicized twice, during the 60-day notice period, in two separate weeks during the Notice period in the newspapers with the greatest circulation in Northern Nevada and Southern Nevada. *See* Settlement, ¶ 1.10; Jones Dec., ¶ 31.  The Notice Postcard and publication will direct Class Members to a dedicated website, which will include the Longform Notice text explaining that Class Members must submit an electronic claim form, found on the same website, in order to claim their share of the Settlement; how to request to be excluded or object; and the consequences of the action the Class Member takes (doing nothing, exclude themselves / opting out, or objecting), in terms of both financial benefit and release of the alleged claims. *See* Exhibit A-C, Postcard Notice, Longform Notice, and Claim Form.  The Notice advises Class Members about the final approval hearing, their rights with respect to that hearing, and how to get more information. *Id.*  The 60-day time frame for submitting a claim, requests to exclude/Opt-Out, or object is straightforward, allowing Class Members to digest the information in the notice and obtain answers to questions before deciding on the action they wish to take. Accordingly, in addition to approving the Settlement agreement as a whole, the Parties

respectfully ask that the Court approve the Notice and other ancillary forms in substantially the format presented with the Settlement.

**E.    Approval and Appointment of Phoenix Class Action Administration Solutions as Settlement Administrator.**

Phoenix Class Action Administration Solutions should be appointed as the Settlement Administrator in this case and instructed to carry out the terms of the Settlement. Phoenix has committed to effectuate the administration of the Settlement within the costs allocated under the Settlement. Accordingly, Phoenix should be appointed as Settlement Administrator, and their fees and costs of $75,000.00 should be preliminarily approved.

## V.    CONCLUSION

Based on the information and reasons provided above, the Parties respectfully request that the Court enter the proposed order granting preliminary approval of the class action Settlement attached hereto.

Dated this 22nd day of November 2024.            Dated this 22nd day of November 2024.

THIERMAN BUCK, LLP                               KAEMPFER CROWELL
*/s/ Leah L. Jones*                               */s/ George Verschelden*

Mark R. Thierman, Nev. Bar No. 8285              Robert McCoy, Nev. Bar No. 9121
Joshua D. Buck, Nev. Bar. No. 12187              Ryan M. Lower, Nev. Bar No. 9108
Leah L. Jones, Nev. Bar No. 13161                Sihomara L. Graves, Nev. Bar No. 13239

*Attorneys for Plaintiffs*                        STINSON LLP
                                                  George Verschelden (pro hac vice)

                                                  *Attorneys for Defendants Rapid Financial*
                                                  *Solutions, Inc., Axiom Bank N.A., and Keefe*
                                                  *Commissary Network, LLC*

JOINT MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT