Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
**THIERMAN BUCK LLP**
325 W. Liberty Street
Reno, Nevada 89501
Tel. (775) 284-1500   Fax (775) 703-5027

Christian Gabroy, Nev. Bar No. 8805
Kaine Messer, Nev. Bar No. 14240
**GABROY | MESSER**
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
Tel (702) 259-7777
Fax (702) 259-7704
christian@gabroy.com
kmesser@gabroy.com

Lance J. Hendron, Nev. Bar No. 11151
**HENDRON LAW GROUP, LLC**
625 S. Eighth Street
Las Vegas, Nevada 89101
Office: (702) 710-5555
Fax: (702) 387-0034
Email: lance@hlg.vegas

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER WATKINS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RAPID FINANCIAL SOLUTIONS, INC. d/b/a ACCESS FREEDOM CARDS; AXIOM BANK N.A.; KEEFE COMMISSARY NETWORK, LLC, d/b/a ACCESS SECURE RELEASE; and DOES 1-50,<br><br>Defendants. | Case No.: 3:20-cv-00509-MMD-CSD<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, REPRESENTATIVE PLAINTIFF CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**<br><br>**Hearing Date:** March 26, 2025<br>**Time**: 10:00 a.m.<br>**Judge**: Miranda M. Du |

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com†

Plaintiff CHRISTOPHER WATKINS and all others similarly situated ("Plaintiffs"), by and through his counsel of record, Thierman Buck, LLP, Gabroy │ Messer, and The Hendron Law Group, hereby move this honorable Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order:

(1)    Finally approving the class action settlement between Plaintiffs and Rapid Financial Solutions, Inc. d/b/a Access Freedom Cards; Axiom Bank, N.A.; Keefe Commissary Network, LLC, d/b/a/ Access Secure Release ("Defendants");

(2)    Finally certifying the Rule 23 Class for purposes of settlement;

(3)    Finally approving Class Representative Watkins' Case Contribution Award;

(4)    Finally approving Phoenix Class Action Administration Solutions' fees;

(5)    Finally approving Class Counsel's attorneys' fees and costs; and

(6)    Finally approving the *cy pres* recipients.

This motion is based on the following Memorandum of Points and Authorities in support thereof, the declaration of Jarrod Salinas of Phoenix Claims Administration Solutions, (hereinafter "Salinas Dec."); the declaration of Leah L. Jones, Esq., (hereinafter "Jones Dec.") including Exhibit A, the [Proposed] Final Approval Order; the Declarations of co-counsel Christian Gabroy, Esq. of Gabroy │ Messer, (hereinafter "Gabroy Dec.") and Lance Hendron of the Hendron Law Group (hereinafter "Hendron Dec."); the Letters of Interest of the proposed *cy pres* recipients Northern Nevada Legal Aid and Legal Aid Center of Las Vegas; all exhibits attached thereto, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Dated this 5th day of March 2025.             Respectfully submitted,

THIERMAN BUCK, LLP

By:    /s/ *Leah L. Jones*
Leah L. Jones
*Attorneys for Plaintiffs and the Class.*

**THIERMAN BUCK, LLP**
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On November 26, 2024, the Court entered its Orders granting preliminary approval of the Settlement in the above-captioned case. *See* ECF Nos. 113, 114[1], hereinafter the "Preliminary Order." In addition to approving the overall settlement (the "Settlement"), the Preliminary Order appointed Class Representative and Class Counsel, approved the Notice plan to Class Members, scheduled the final approval and fairness hearing, and confirmed the selection of Phoenix Class Action Administrative Solutions ("Phoenix") as the Settlement Administrator. (ECF No. 113.) Plaintiffs and Defendants, Rapid Financial Solutions, Inc., d/b/a Access Freedom Cards; Axiom Bank, N.A.; Keefe Commissary Network, LLC d/b/a Access Secure Release ("Defendants") (collectively the "Parties") have complied with all the terms of the Court's Preliminary Order. Plaintiffs now seek final approval of this class action settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP").

The class administration procedures ordered by the Court have been completed, as detailed in the declaration prepared by Jarrod Salinas of Phoenix. *See* Declaration of Jarrod Salinas Regarding Notice and Settlement Administration, hereinafter "Salinas Dec." Defendants provided a Class List of 8,961 Class Members. (*Id.,* ¶4.)  After efforts by Phoenix, valid addresses for 2,797 Class Members were located. The Notice ("Notice") was distributed to the 2,797 Class Members. (*Id.,* ¶5.) Three (3) of the 2,797 Notices were deemed undeliverable. (*Id.,* ¶¶9-10.) Phoenix received 40 valid claim forms, with these claimants having claimed $2,984.08 of the available Net Settlement funds. (*Id.,* ¶¶12 and 15.) The highest individual Class Payment to a Participating Class Member is $632.96, the lowest individual payment is $.08, and the average individual Class Payment is $74.60. (*Id.,* ¶17.) No Class Members have requested exclusion from the Settlement, and no Class Member has objected. (*Id.,* ¶¶13-14.)

---

[1] Due to timing errors in the proposed order provided by Counsel, and after Counsel brought such to the attention of the Court, the Court updated its Order (ECF No. 113) by Minute Order. (ECF No. 114.)

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.comt

## II.    KEY TERMS OF THE SETTLEMENT AND FACTUAL SUPPORT

The Parties provided an overview of the procedural history and background of this case in the Parties' Joint Motion for Preliminary Approval and supporting declarations, which Plaintiffs incorporate by reference. (ECF No. 112, 112-1, 112-2.)

### A.    The Settlement Class and the Settlement Allocation

The Court's Preliminary Order approved the following Class definition:

All persons who received a release card between July 31, 2016 and October 20, 2016, or between January 18, 2024 to the present, or opted out of the *Reichert v. Keefe* Settlement, and were: (1) released from a jail, detention center, or prison located in the State of Nevada, (2) entitled to the return of money either confiscated from them or remaining in their inmate account when they were released, (3) issued a prepaid debit card from Defendant Rapid Financial Solutions or its affiliates, and/or Defendant Axiom Bank N.A. of Florida, and/or Defendant Keefe Commissary Network and were subject to fees, charges, and restrictions, and (4) not offered an alternative method for the return of their money.

(ECF No. 113.) In addition, the Court preliminarily approved the following Settlement recovery, based on a non-reversionary settlement for a total maximum settlement amount of $815,000.00 with the following terms: (1) $215,000.00 in estimated settlement funds to the Class; (2) $75,000.00 in Settlement Administrator's reasonable fees and expenses; (3) Up to $15,000.00 as Case Contribution Award to Plaintiff Christopher Watkins; (4) Up to $500,000.00 in attorneys' fees; and (5) Up to $10,000.00 in costs incurred by Class Counsel.

### B.    The Release of Claims, Notice Process, and Proposed *Cy Pres* Recipients

#### 1.    The Claims Released

Once the Settlement is final and effective, the Class Representative and all Settlement Class Members who have not opted out will release all federal and state law claims for damages against Defendants that are based on the factual allegations asserted in this action. (ECF No. 112-1, p. 13, ¶3, "Recitals"; p. 17, §3, "Releases.")

#### 2.    The Notice Process

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com†

The class administration procedures ordered by the Court have been completed, as detailed in the declaration prepared by Jarrod Salinas of Phoenix. (Salinas Dec., ¶2.) Phoenix received the Class list from Defendants on December 16, 2024. (*Id.*, ¶4.) Defendants' records contained the names, last known mailing addresses, and Debit Card Amounts for each Class Member during the Class Period. (*Id.*) The final mailing list contained 8,961 individuals identified as Class Members. Of the 8,961 Class Members, the Class List included 2,797 mailing addresses (*Id.*) On December 18, 2024, Phoenix conducted a National Change of Address ("NCOA") search in an attempt to update the class list of addresses as accurately as possible. (*Id.*, ¶5.) A search of this database provides updated addresses for any individual who has moved in the previous 4 years and notified the U.S. Postal Service of their change of address. (*Id.*) No additional address information was obtained. (*Id.*)

**Direct Mail Notice Postcard.** The Notice Postcard text and form were approved by the Court, and no changes were made to the printed version. (*See, e.g.,* ECF No. 112-1, pp. 31-32, Ex. A, Postcard and Publication Notice; Salinas Dec., ¶6, Exhibit A.) The Postcard clearly set forth it was not a solicitation from a lawyer but a notice authorized by the Court, indicating release cardholders could be entitled to return of fees, listed the Nevada facilities at issue, instructed Class Members that they **MUST SUBMIT AN ELECTRONIC CLAIM FORM** (emphasis in original), provided Phoenix's toll-free number, Phoenix's mailing address, and Class Counsel's mailing address, telephone number, and email address. (Salinas Dec., ¶4, and *citing* Exhibit A.) The Notice Postcard was mailed to each Class Member's last known address of 2,797 Class Members based on Defendants' records. (*Id.*) Of the 2,797 Notice Postcards mailed, three (3) were returned undeliverable. (*Id.*, ¶¶10-11.)

**Publication Component.** In addition, the Notice Postcard was publicized twice during the 60-day Notice period in Southern Nevada. (Salinas Dec., ¶8, and *citing* to Exhibit C.) In Southern Nevada, the Notice postcard appeared in the Las Vegas News and Review also on January 13, 2025, and February 10, 2025. (*Id.*) Due to an error by Phoenix, the legal notice was not published in Northern Nevada during the same time period. Thus, Phoenix will publish the legal notice in English and Spanish, in the Reno Gazette Journal on March 9, 2025, and March 16, 2025. (*Id.,*

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

¶9.) The legal notice will be identical to Exhibit C, instructing Class Members to go to www.watkinsrapidclassaction.com in order to submit a claim. The deadline for the Gazette Journal publication Notice is March 25, 2025. (*Id.*) An updated declaration on behalf of Phoenix will be provided setting forth the status of any additional claims, whether there are any or not, and filed with the Court by Class Counsel before the March 26, 2025, hearing. (*Id.*) A true and correct copy of the publication will be attached to the declaration. (*Id.*) The content of the Publication Notice Postcard was identical to the Notice Postcard as set forth directly above. (*Id.*)

**Dedicated Website.** As noted above, both the mailed and published Notice Postcards directed Class Members to a dedicated website, www.watkinsrapidclassaction.com, which included a home page that clearly set forth "Important Deadlines" in an uncluttered, easy to read manner. The top of the Home page included clickable tabs housing the PDF versions of the relevant Notice documents, particularly (i) the claim form, and (ii) the longform notice but also included (iii) the Settlement Agreement and (iv) the Court's Order granting preliminary approval. (Salinas Dec., ¶7, and *citing* to Exhibit B.) Thus, Class Members could readily review the Settlement terms—a description of the lawsuit, the class definition, and which facilities the Settlement covered, Class Members options to: (A) Submit a claim form, giving up further rights to sue and receive a cash payment; (B) Opt-out/exclude themselves, keep their rights and have the option to file their own lawsuit, but not receive payment; (C) Object to the Settlement; as well as the attorneys' fees and costs, named plaintiff case contribution award, settlement administration costs, and the final approval hearing date and time—in two separate locations, (1) the clickable Notice in longform, and (2) the actual Settlement Agreement filed in Court. (*Id.*) Most importantly, the website also included the clickable electronic "Claim Form." (*Id.*) Further, the website included a clickable "Contact" tab directing Class Members to Phoenix's mailing address, listed their FAX number, and a toll-free, 24-hour call center set up to answer Class Member questions. (*Id.*, ¶3.) In order to prevent any electronic barriers to claims, should Class Members have issues with the clickable claim form or did not have access to a computer or cell phone, or were not "computer savvy" they were able to mail or fax in their Claim Form. (*Id.*)

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

In addition, Thierman Buck included information on their website specific to the *Rapid adv. Watkins* case at https://thiermanbuck.com/case/rapid-financial-solutions-inc-adv-watkins/ . (Jones Dec., ¶31.) The *Rapid* webpage provided a brief overview of the case, the fact that the Parties had reached a settlement through mediation, included clickable PDF copies of the Complaint, the Joint Motion for Preliminary Approval, the Court's Order granting Preliminary Approval, and the Phoenix claim page of https://watkinsrapidclassaction.com/ (*Id.*) Any visitor to the Thierman Buck *Rapid adv. Watkins* page was also able to use a clickable link to contact Thierman Buck via email with any questions and in order to receive a personal call back. (*Id.*)

**Class Member Participation.** All invalid or deficient claim forms and any self-identifying claimants were contacted directly by Phoenix to either cure their deficiency or confirm, after conferring with Defendants, whether the claimant was indeed a Class Member. (Salinas Dec.*,* ¶¶12-14.) Class Counsel received a total of nineteen (19) inquiries from Class Members, responded to their queries, and directed them to the on-line Phoenix claim form, Phoenix's toll-free customer service line, and/or walked them through the online claim form in real time. (Jones Dec., ¶31.) Ultimately, of the 2,797 Notice Postcards Phoenix was able to mail, 40 Class Members submitted a claim form, equating to 1.43% of the Class Members for whom Defendants provided addresses. (Salinas Dec., ¶12.)

In sum, the 40 Class Members will each receive reimbursement of the fees associated with the release card, plus three times as set forth in the Settlement Agreement. This equates to $2,984.08 of the available net Settlement funds.[2] (*Id.,* ¶15.) The highest individual Class Payment

_____

[2] Here, Defendants provided a class list of 8,961 total class members from thirteen prisons, jails, and detention centers located in Nevada. *See* Salinas Dec., ¶4. A total of 2,797 Notice postcards were actually delivered, and it is unknowable if Class Members received Notice through the publication component. *Id.* The known Notice rate, therefore, equates to 31.2%. In comparison, the nationwide *Reichert* action included an estimated 2,877,860 class members from over 1,500 facilities across the U.S. *See Reichert v. Keefe Commissary Network, LLC d/b/a Access Corrections; Rapid Financial Solutions, d/b/a Access Freedom; and Cache Valley Bank,* Case No. 3:-17-cv-05848-BHS (W. D. Wa., Dec. 11, 2023), ECF No. 210, Unopposed Motion for Preliminary Approval, p. 11:5-7, attached as Exhibit E to the Jones Dec., ¶9. Per the claims administrators' declaration filed in support of the *Reichert* final approval, 782,843 postcards were deemed delivered, and 5,138 claim forms were received. *See Reichert,* ECF No. 233, Declaration of Kroll Settlement Administration, pp. 3-4 and 6, attached as Exhibit F to the Jones Dec., ¶10. Even after the claim period was extended three additional times, no additional claim forms were

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com†

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.comt

to a Participating Class Member is $632.96, the lowest individual payment is $.08, and the average individual Class Payment is $74.60. (*Id.,* ¶17.) No Class Members have requested exclusion from the Settlement, and no Class Member has objected. (*Id.*, ¶¶13-14.) Any checks that remain unclaimed after 90 days will be sent to the Nevada Unclaimed Property Fund. (ECF No. 112 *citing* Settlement Agreement, §9.4.)

### 3.    The Proposed *Cy Pres* Recipients

After deducting all Class Awards, the preliminarily approved attorney's fees and costs, and Phoenix's fees, there will be $215,476.29 remaining in the Settlement Fund. (*See* Salinas Dec., ¶17; Jones Dec., ¶32.) The Court preliminarily approved *cy pres* recipients Northern Nevada Legal Aid ("NNLS") and Legal Aid Center of Southern Nevada as identified in the Joint Motion for Preliminary Approval. (ECF No. 112, p. 819-24.) Each of these proposed *cy pres* recipients have a "substantial nexus" to the interest of the members of the class. *See Lane v. Facebook, Inc.,* 696 F.3d 811, 821 (9th Cir. 2012) *citing to Six Mexican Workers v. Arizona,* 663 F.3d 1301, 1036 (9th Cir. 1990) (explaining "that a *cy pres* remedy must be the 'next best distribution' of settlement funds means only that a district court should not approve a *cy pres* distribution unless it bears a substantial nexus to the interests of the class members … the *cy pres* remedy 'must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members… .'" (Internal citation omitted.)

Here this class action recovered the actual fees plus three times the actual fee amount charged on Defendants' Access Freedom cards for released inmates who had trust account balances. These release cards were loaded with the inmates' own funds from monies confiscated upon incarceration, wages earned during incarceration, and/or unused funds sent to the inmate by

---

received by Kroll. *See Reichert,* ECF No. 243, Motion for Approval of *Cy Pres*, p. 2:12-16, attached as Exhibit G to the Jones Dec., ¶11. Thus, based on the directly mailed postcard numbers, the *Reichert* postcard claim rate equated to .66%. Here, the claim rate equates to 1.43% based on 40 claims of the 2,797 Notices delivered. Interestingly, *Reichert* Counsel never provided a final total number of claims received. *Id.* Instead, after deducting all outstanding fees remaining to be paid, $5.2 million remained and was ultimately approved to the *cy pres* recipients in *Reichert. Id.,* p. 7:2-4.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.comt

family members for use at a commissary.[3] Any balance of the inmate trust account must be returned to the individual upon their release from custody.  (*Id.*, p. 1:22-23.)

Thus, in determining recommendations for the proposed *cy pres* recipients, Class Counsel sought organizations in Northern and Southern Nevada that have programs specifically focused on formerly incarcerated individuals and non-criminal issues they face after release.

***Northern Nevada Legal Aid.*** Attached to this Motion is a Letter of Interest from David Spitzer, Executive Director of NNLA (hereinafter "NNLA Letter of Interest" attached to the Jones Dec., ¶35 as Exhibit H). NNLA was formerly known as Washoe Legal Services and is a 501(c)(3) non-profit legal aid organization that relies 100% on private donations, grants, and endowments. (*Id.*) NNLA has been providing services to vulnerable persons in Northern Nevada for over 60 years. (*Id.*) NNLA operates in Washoe, Douglas, Lyon, and Storey Counties as well as Carson City. (*Id.*) NNLA provides services for previously incarcerated individuals with legal problems such as housing and eviction issues, legal representation in divorce and child custody matters, and assistance with record sealing and expungement. (*Id.*) NNLA will use these much-needed funds to re-establish the "Know Your Rights" programs for formerly incarcerated persons in conjunction with "Ask A Lawyer" events throughout Northern Nevada. (*Id.*) For instance, NNLA assisted an incarcerated individual who was due to complete his term but was suffering from dementia. (*Id.*) The prison proposed placement to a homeless shelter, but through NNLA's Adult Guardianship program, NNLA advocated for an appointment of a Public Guardian to assist their client with the transition from prison to a stable living situation with access to the benefits he was entitled to for continued care. (*Id.*) Their client remains happy and healthy in his new group home. (*Id.*) In sum, these funds will not be used for criminal matters and will not be limited to Washoe County but will be used in Northern Nevada for people with a substantial nexus to the members of the Class in this case. (*Id.*)

***Legal Aid Center of Southern Nevada.*** Attached to this Motion is the Affidavit of Executive Director, Barbara Buckley of LACSN (hereinafter "LACSN Affidavit" attached to the

---

[3] *See* ECF No. 105, p. 2:23-26, Order, hereinafter referred to as "MSJ Order", granting in part and denying in part cross-motions for summary judgment and reciting undisputed facts.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.comt

Jones Dec., ¶36 as Exhibit I).  LACSN is a private, non-profit, 501(c)(3) law firm, dedicated to providing civil legal services to the most vulnerable members of their community who are unable to afford an attorney. (*Id.,* ¶4.) LACSN's services are in high demand and these much needed funds will be used to assist formerly incarcerated individuals. (*Id.,* ¶5.) For instance, this work will primarily be done as part of LACSN's "Clean Slate Legal Assistance Project" where LACSN helps provide a fresh start to individuals through record sealing. (*Id.*) LACSN's most recent record sealing event helped roughly 150 individuals through same day assistance. (*Id.*) In sum, these funds will be used in to help people with a substantial nexus to the members of the Class in this case. (*Id.*)

Accordingly, and based on Counsel's review of the various legal aid providers in Nevada and after further discussion with NNLA and LACSN, Class Counsel believes the *cy pres* award should be split equally between NNLA and LACSN because each *cy pres* recipient will use these funds for programs that support people with a substantial nexus to the members of the Class in this case. (Jones Dec., ¶37.)

## III.    ARGUMENT IN FAVOR OF FINAL APPROVAL OF THE SETTLEMENT

Federal Rule of Civil Procedure 23(e) "mandates judicial review of any settlement of the claims, issues, or defenses of a certified class." *Sobel v. Hertz Corp.*, No. 3:06-CV-00545-LRH-RAM, 2011 WL 2559565, at *5 (D. Nev. June 27, 2011), *citing* FRCP 23(e). Three steps must be satisfied for final approval of the Settlement. First, the Court must finally certify the Settlement Class. Second, the Court must find that the Class received adequate notice under Federal Rule of Civil Procedure 23(c)(2)(B). Third, the Court must decide whether the Settlement is "fair, reasonable, and adequate." *See* FRCP 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (discussing Rule 23(e)(2) standard). These requirements are all met.

### A.    The Settlement Class Should Be Finally Certified

In the Preliminary Approval Order, this Court provisionally certified the Class under Rule 23. (ECF No. 113.) The same analysis applies here. Thus, the Class should be certified for settlement purposes under Rule 23(e), for the same reasons set forth in the Parties' Joint Motion for Preliminary Approval of the Settlement. (ECF No. 112, pp. 11-17, §IV.A-B.)

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: inforr@thiermanbuck.com; www.thiermanbuck.comt

### B.    Rule 23(c)'s Notice Requirements Have Been Met

As set forth in the Joint Motion for Preliminary Approval, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *See Sinanyan v. Luxury Suites Int'l, LLC,* 2018 WL 815551, at *2 (D. Nev. Feb. 8, 2018), *citing* FRCP 23(e)(1). For purposes of this rule, the court shall direct to members of the Class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. *Id.* However, "the best notice practicable under the circumstances" and what constitutes "reasonable effort" is a determination of fact to be made in the individual litigation." *See In Re "Agent Orange" Product Liability Litig.,* 100 F.R.D. 718, (E.D.N.Y. 1983), *cert. denied* 100 F.R.D. 735, *mandamus denied* 725 F.2d 858, *certiorari denied* 104 S. Ct. 1417, 465 U.S. 1067, *affirmed* 818 F.2d 145, *certiorari denied* 108 S. Ct. 695, 484 U.S. 1004, *on remand* 689 F. Supp. 1250.

Although notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required. *See Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994). The rule's "reasonable effort" standard of giving notice to the members of the class encompasses individual notice, publication in newspapers, or a combination of both. *See Cohen v. Dist. Of Columbia,* 59 F.R.D. 84, 91 (D.C.D.C. Oct. 18, 1972); *see also Anderson v. Davis Wright Tremaine LLP,* 2023 WL 6003862, at *12 (D. Or. Sept. 5, 2023), *report and recommendation adopted*, 2023 WL 11918036 (D. Or. Dec. 14, 2023) (finding notice by mail, publication, and website was fair, reasonable and adequate to notify class, *citing Ciuffitelli v. Deloitte & Touche LLP,* 2019 WL 1441634, *20 (D. Or., March 19, 2019).

Here, as detailed above at §II.B.2, the Notice process included a direct mail, publication, and a website component, each designed to get Notice to the greatest number of Class Members as possible. Phoenix employed reasonable efforts to identify all Class Members as outlined in the Phoenix Declaration. (*See* Salinas Dec., *generally*.) Particularly, the Notice included a mailed Notice Postcard directing Class Members to a dedicated website, www.watkinsrapidclassaction.com, containing a "Home" page with clickable tabs housing the PDF versions of the relevant Notice documents, particularly (i) the claim form and (ii) the

- 9 -

longform notice, but also included (iii) the Settlement Agreement, and (iv) the Court's Order granting preliminary approval. Thus, Class Members could readily review the Settlement terms in two separate locations: (1) the clickable Notice in longform, and (2) the actual Settlement Agreement filed in Court. (Salinas Dec., ¶¶2-3, ¶6 and citing Exhibit A, ¶7 citing Exhibit B, Further, ¶¶8-9, citing Exhibits C and D.)  The website included a clickable "Contact" tab directing Class Members to Phoenix's mailing address, listed their FAX number, and a toll-free, 24-hour call center to answer Class Member questions. (Id., ¶¶6-7.) Thierman Buck's *Rapid* case page also included a link to www.watkinsrapidclassaction.com. In order to prevent any electronic barriers to claims, should Class Members have issues with the clickable claim form, or did not have access to a computer or cell phone, or were not "computer savvy" they were able to mail or fax in their Claim Form. (*See e.g.,* Salinas Dec., ¶3.) In addition to the Postcard and website components, the Notice Postcard was publicized twice in Southern Nevada and twice in Northen Nevada. (Salinas Dec., ¶¶8-9.) The publications were printed in Spanish and English. (*Id*).

Class Counsel asserts that through their own efforts and particularly the efforts of the Claims Administrator, Phoenix, the best Notice practicable pursuant to FRCP 23(e)(1) was effectuated under the circumstances specific to this individual litigation.

## C.    The Settlement Is Fair, Reasonable, and Adequate

The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," who "is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998). But the "court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Rodriguez v. West Pub. Co.*, 563 F.3d 948, 965 (9th Cir. 2009) (citation and internal quotation marks omitted).

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution," which is "especially true in complex class action litigation." *In re Syncor ERISA*

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.comt

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.comt

*Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (internal quotation marks and citation omitted). There "is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). A "presumption in favor of voluntary settlement agreements" exists, and "this presumption is especially strong in class actions and other complex cases … because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3rd Cir. 2011) (internal citation and quotation marks omitted).

In determining whether a settlement agreement is fair, reasonable, and adequate, the Court must weigh some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) *citing Hanlon,* 150 F.3d at 1026. Courts are not required to assess whether the settlement is ideal or the best outcome, but "only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class." *Hanlon*, 150 F.3d at 1027; *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (courts should also consider whether the settlement is a product of fraud or collusion). All of these factors support final approval of the Settlement.

### 1.    Relative strengths of Plaintiffs' claims.

In considering the relative strength of plaintiff's claims, courts typically consider decisions relating to the merits of the plaintiff's claims and whether settlement occurs before any substantive motions are decided. *See e.g., Pierce v. Rosetta Stone, Ltd.*, No. C- 11-01283 SBA, 2013 WL 5402120, at *3 (N.D. Cal. Sept. 26, 2013); *Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *3 (N.D. Cal. Dec. 3, 2012). The litigation history is set forth

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com†

in the Parties' Joint Motion for Preliminary Approval (ECF No. 112), the Jones Dec. in support thereof (ECF No. 112-1) and is incorporated by reference.

Here, over the past four-plus years of hard-fought litigation the Parties have engaged in extensive motion work, the Court denied Defendants' Motion to Compel Arbitration, Plaintiffs were granted FRCP 23 Class Certification, over two years of discovery was conducted, dueling motions for summary judgment were filed and ruled on, all leading to the Court ordered mediation with the Honorable Magistrate Judge Denney. (Jones Dec., ¶¶18-20.) During that mediation, and with an eye toward trial, the Parties further considered their relative strengths and weaknesses, as well as vehemently disputed the value of the Class Claims and provided written offers and counter offers, culminating in extensive mediation statements that informed the arms-length negotiations resulting in the Settlement. (*Id.* ¶¶20-27.) Thus, the discovery and extensive motion practice, including dispositive motions prior to mediation, provides this Court with the ability to "adequately evaluate[]" the merits of the likelihood of success of Plaintiffs' claims. *Churchill,* 361 F.3d 576.

### 2.    Risk, expense, and complexity of further litigation.

Settlement is preferable to lengthy and expensive litigation with uncertain results. *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 6900931, at *7 (D. Nev. Dec. 26, 2012) *report and recommendation adopted*, 2013 WL 211085 (D. Nev. Jan. 18, 2013).

The risks involved in this case were significant. (Jones Dec., ¶¶18-20.) The greatest risk was the risk of losing at trial and recovering nothing for the class in light of Defendants' defenses to the underlying claims, including genuine disputes as to material facts specific to prepaid debit cards and the ability of Plaintiffs to maintain class certification pursuant to FRCP 23. *Id.* Specific to Defendants' defenses, Plaintiffs faced the following: (i) the initial risk that the Court would grant Defendants' motion to arbitrate on the theory that inmates such as Mr. Watkins had entered into a valid contract with a class action waiver, as opposed to Plaintiffs' assertion that any purported agreement to use the release cards amounted to an unlawful adhesion contract; (ii) the risk that Plaintiffs would be required to name each prison, jail, and/or detention center as indispensable parties and the various immunity and state actor defenses available thereto; (iii) the

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.comt

risk that actual and statutory damages pursuant to both federal and Nevada law were not recoverable; (iv) the varying liability periods pursuant to federal and Nevada law, (v) the varying damage recovery for each release cardholder; and (vi) the risk of appellate practice at the Supreme Court of Nevada and/or the Court of Appeals for the Ninth Circuit on any of these issues. (*Id.*) These risks associated with further litigation weigh in favor of final approval, consistent with the established policy preferring settlement over further time-consuming litigation. *Harris*, 2012 WL 6900931, at *7.

3.     Risk of maintaining collective/class status.

Here, the risk that a Class might not be maintained through trial or might be significantly smaller than proposed, and the time, expense, and complexity of the litigation, including the possibility of additional appellate proceedings, presented great risk and further expense and delay had the Parties failed to reach a compromise. Of particular relevance to the reasonableness of the proposed Settlement are the numerous potentially dispositive defenses advanced by Defendants as noted above including, the arbitration issue, the risk that Plaintiffs would be required to name each prison, jail, and/or detention center as indispensable parties and the various immunity and state actor defenses available thereto; the risk that actual and statutory damages pursuant to both federal and Nevada law were not recoverable; and the varying liability periods and amounts of damage recovery for each release card holder. (Jones Dec., ¶19.) In sum, the Settlement eliminates all uncertainty and gives class members a substantial payment now, as opposed to trial and possible appellate litigation.

4.     Benefits conferred by the Settlement.

A settlement may be fair and reasonable even if it provides only a fraction of what could have been obtained at trial. *See e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (compromise is essence of settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2nd Cir. 1974) *abrogated on other grounds* (that proposed settlement may amount to only a fraction of potential recovery does not mean the proposed settlement is inadequate and should be disapproved). In preparation for mediation, Defendants provided Plaintiffs data related

to updated fees for: (1) the total fees charged to Nevada Cardholders between July 2016 and October 2016, of $33,334.02, (2) the fees paid by Nevada Cardholders between January 2024 to September 21, 2024, of $22,902.67. (Jones Dec., ¶21.) Defendants did not provide the actual number of cardholders. (*Id.*) This information was used to provide the required exchange of settlement proposals, including offers and counter offers, and to negotiate and make a good faith effort to settle the case without Court involvement. (ECF No. 106.) The Parties complied but were quite far apart specific to the law and the value of the Class Members' claims coming into the mediation. (Jones Dec., ¶¶21-23.)

Using an estimated hard damage exposure, the gross settlement fund amount of $815,000.00 represents a recovery rate of approximately 68%. (*Id.,* ¶22.) Plaintiffs agreed to resolve his claim on behalf of himself and on behalf of the Class at an estimated 67.99% recovery of the total potential for the following principal reasons. (Jones Dec., ¶¶24-26; *see also Villegas v. JP Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) *citing In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair.")).

First, as with all settlements, a recovery of 68% of the total potential recovery represents a certain payout for all members of the Class. (*Id.*) Second, resolving the action as a total non-reversionary payout to all members of the Class takes away any risk that the action may not ultimately proceed through trial on a class-wide basis. By resolving the case on a class-wide basis, all class members will be receiving funds, whereas there is a significant risk that the amount paid to absent class members would be zero. (*Id.*) Third, the case was highly disputed as to what damages if any Class Members were entitled to and particularly whether they were entitled to treble and or punitive damages. In short, the class, liability, and damage issues in this case were all hotly contested, and the Settlement represents a fair, reasonable, and adequate compromise of this litigation. (*Id.,* ¶¶19-26.) Further, because all Class Members will receive their fees paid plus three times, the Settlement's allocation equitably bases the distribution of Settlement funds on the

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.comt

1    type and extent of damages actually suffered by Class Members. (*Id.,* ¶25.)  Accordingly, this

2    factor also favors final approval of the Settlement.

3        5.    <u>Extent of discovery completed and stage of the proceedings</u>.

4        As detailed in the Parties' Joint Motion for Preliminary Approval and discussed above in

5    each of the preceding sections, this Settlement was only possible after sufficient discovery,

6    decisions on dispositive motions, and genuine arms-length negotiation through mediation just

7    prior to a trial date being set and should be presumed fair. *City P'ship Co. v. Atlantic Acquisition*

8    *Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Both Parties were well versed in the facts and

9    law applicable to the issues and had evaluated the merits of their claims and defenses in

10   preparation for mediation, a trail, and the potential for appellate litigation. *Tijero v. Aaron Bros.,*

11   *Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013). Truly, at the time the settlement was reached, the

12   Parties "ha[d] a clear view of the strengths and weaknesses of their cases." *In re Warner*

13   *Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). Accordingly, this factor weighs in

14   favor of final approval.

15       6.    <u>Experience and views of Plaintiffs' Counsel</u>.

16       Because they are closely acquainted with the underlying litigation, significant "weight is

17   accorded to the recommendation of counsel." *Nat'l Rural*, 221 F.R.D. at 528 (quoting *In re Paine*

18   *Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). Plaintiffs are represented by

19   counsel with broad experience in complex class action litigation. (Jones Dec., ¶¶5-8 and 14; *see*

20   *also* Declaration of Christian Gabroy, generally, attached as Exhibit C to the Jones Dec., ¶7;

21   Declaration of Lance Hendron, generally, attached as Exhibit D, to the Jones Dec., ¶8.) Plaintiffs'

22   Counsel recommends that the Settlement be approved because they believe it is fair, reasonable,

23   and adequate to the Class Members and because it reflects a reasoned compromise that takes into

24   consideration the inherent risks in class litigation and, in particular, this litigation. (Jones Dec. at

25   ¶¶24-26.) Given the experience of the attorneys involved in this action, the Court should credit

26   counsels' view that the settlement is fair, reasonable, and adequate.  *Id.; see also Rodriguez*, 563

27   F.3d at 967 (parties represented by capable counsel better positioned than courts to produce a

28

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

settlement that fairly reflects each party's expected outcome). Accordingly, this factor weighs in favor of final approval as well.

### 7.    Presence of a governmental participant.

There is no governmental participant in this action.  As a result, this factor is inapplicable.

### 8.    Reaction of the Class.

As detailed in §II.B.2 and III.B, above the Notice to Class Members was effectuated as "the best notice practicable under the circumstances" with what constitutes "reasonable effort" in this individual litigation. *See In Re "Agent Orange" Product Liability Litig., supra.* Ultimately of the 2,797 Notice Postcards Phoenix was able to mail, 40 Class Members submitted a claim form. (Salinas Dec., ¶¶4, 12.) Participating Class Members will each receive reimbursement of the fees associated with the release card, plus three times as set forth in the Settlement Agreement. This equates to $2,984.08 of the available net Settlement funds. (*Id.,* ¶15.) The highest individual Class Payment to a Participating Class Member is $632.96, and the average individual Class Payment is $74.60. (*Id.*) No Class Members have requested exclusion from the Settlement, and no Class Member has objected. (*Id.*, ¶¶13-14.) Any checks that remain unclaimed after 90 days will be sent to the Nevada Unclaimed Property Fund. (ECF No. 112 *citing* Settlement Agreement, §9.4.)

### 9.    The negotiation process was free from fraud and collusion.

The Court's inquiry into what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *FDIC v. Alshuler*, 92 F.3d 1503, 1506 & n.5 (9th Cir. 1996). Here, the Court preliminarily concluded that the settlement was "fair, reasonable, and adequate" as to all potential settlement class members. (ECF No. 113.) Nothing has changed to alter that conclusion. The Parties began settlement negotiations only after years of litigation, sharing necessary information through the exchange of disclosures and pertinent discovery, researching the relevant legal issues, rulings on dispositive motions, engaging in serious arms-

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

length negotiations and analyzing the potential recovery, and ultimately reaching the Settlement with the assistance of Magistrate Judge Denney preliminarily approved by the Court. The Parties acknowledged the risks on the merits and class issues and determined that settlement was sensible to avoid these risks, and the time and expense required for further litigation. (Jones Dec., ¶¶20-23.) Because the Parties were fully informed and engaged in arms-length negotiations, the agreement is free from fraud and collusion. (*Id.*)

In short, under the applicable standards for approval of a class action settlement under FRCP 23(e), the Settlement meets the standards for final approval.

## IV. PHOENIX CLAIMS ADMINISTRATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

As set forth in §II.B.2 above and the Declaration of Mr. Salinas, Phoenix has fully complied with the Settlement and the Order of this Court preliminarily approving the Settlement. Phoenix has incurred and will incur $74,181.05 in costs in furtherance of the administration of the Settlement. (Salinas Dec., ¶18.) Given the work performed and expenses incurred on behalf of the Settlement Class, the Claims Administration fee should be finally approved as fair, reasonable, and adequate.

## V. CLASS REPRESENTATIVE WATKINS' CASE CONTRIBUTION AWARD SHOULD BE APPROVED

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). The amount of $15,000.00 to named Plaintiff Warkins is not excessive. The $15,000.00 total Case Contribution Award to Plaintiff Watkins is in line with what is generally awarded in consumer class-action settlements. *In re Currency Conversion Fee Antitrust Litig.,* 263 F.R.D. 110, 131 (S.D.N.Y. 2009), *aff'd sub nom. Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (approving $15,000.00 for Plaintiff Ross in consumer class action for price-fixing fees of general purpose card networks, noting considerable risk of arbitration clause in cardholder agreements that could have required claims to be arbitrated, the substantial time and effort by the class representative including written

discovery, deposition, attending hearings, reviewing submissions, and that the notice to class members included the award).

Here, as set forth in the Preliminary Approval Motion, Mr. Watkins has been an active participant in the litigation. (ECF No. 112-1, pp. 8-9, Jones Dec. at ¶¶27-29; Declaration of Christopher Watkins, ECF No. 112-2, generally.) Nothing has changed to diminish his contributions. Additionally, his Case Contribution ward was included in the Notice to the Class Members, and no Class Member objected to such Payment. Accordingly, Mr. Watkins' Case Contribution Award should be approved. (Jones Dec., ¶¶39-41.)

## VI.   CLASS COUNSEL'S ATTORNEYS' FEES SHOULD BE APPROVED

FRCP 23(e) provides that a settlement may be reached by compromise with the Court's approval. FRCP 23(e) ("The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval.) Further, FRCP 23(h) provides that a court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement" and must meet the procedures of FRCP 54(d).[4] The Ninth Circuit continues to hold that district courts

---

[4] FRCP 23(h) states in full: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply: (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner. (2) A class member, or a party from whom payment is sought, may object to the motion. (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a). (4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2).

FRCP 54(d)(2) states in relevant part: (A) *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages. (B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must: (i) be filed no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (iii) state the amount sought or provide a fair estimate of it; and (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Through this Motion and the supporting Declarations Counsel provides their request for attorneys' fees and costs which was included in the Class Notice, setting forth Class Members

THERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: infor@thermanbuck.com; www.thermanbuck.comt

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

have broad discretion in calculating attorneys' fees. *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024) (*citing, A.D. v. California Highway Patrol*, 712 F.3d 446, 450 (9th Cir. 2013). The Ninth Circuit reviews fee awards for abuse of discretion and will "affirm unless the district court applied the wrong legal standard or its findings were illogical, implausible, or without support in the record." *Edmo*, 97 F.4th at 1168, *citing Gonzalez v. City of Maywood*, 729 F.3d 1196, 1201-02 (9th Cir. 2013) (internal alteration and quotations omitted). The district court must "fully explain[ ] its reasoning in making an award." *Edmo*, 97 F.4th at 1168, *citing McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

### A.    Class Counsel's Fee Request is Less Than the Lodestar

To calculate attorney fees, courts in the Ninth Circuit use the two-step "lodestar method." *Edmo*, 97 F.4th at 1168, *citing Gonzalez*, 729 F.3d at 1202. The first step is to determine the presumptive lodestar figure. *Id.* The court begins by tallying the number of hours an attorney reasonably expended on the prevailing party's case. *Id.* The court then multiplies the number of hours by a reasonable hourly rate based on evidence of the market rate for the services provided. *Edmo*, 97 F.4th at 1168, *see Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). The result of this equation is the lodestar figure, which is treated as a presumptively reasonable award.

After calculating the lodestar figure, the court proceeds to the second step: considering whether to enhance the award based on the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Here, Class Counsel's lodestar is greater than the fees agreed to by the Parties during mediation. Generally, a district court is "not required" to conduct a lodestar cross-check to assess the reasonableness of a fee award. *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017). Even a pure lodestar-based fee award does not require mathematical precision. *Mendenhall v. NTSB*, 213 F.3d 464, 472 (9th Cir. 2000); *Kang*, 2021 WL 5826230, *17 ("on a lodestar cross-check this Court is not required to flyspeck the time sheets"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("lodestar cross-check calculation need entail neither mathematical precision nor bean counting").

---

ability to object and appear at the final approval hearing and analyzes the applicable law in compliance with FRCP 23(h) and 54(d)(2).

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

THIERMAN BUCK, LLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: infor@thiermanbuck.com; www.thiermanbuck.comt

1      Class Counsel's lodestar to date is $539,092.50, reflecting 877.80 hours of professional

2   time that have been devoted to this case thus far. (Jones Dec. at ¶¶47-48.) The lodestar figures are

3   based on hourly rates ranging from $115.00 for legal assistants up to $1,050.00 for senior partners,

4   which have been accepted by other courts as fair and reasonable.[5]  (Jones Dec., ¶51; Gabroy Dec.,

5   ¶¶17-19; Hendron Dec., ¶¶10-11.)

6      Based on the current combined lodestar, the proposed fee award of $500,000.00 represents

7   a negative multiplier of .93. (*Id.,* ¶48.) This is reasonable in view of "the substantial risk class

8   counsel faced, compounded by the litigation's duration and complexity"—factors that would have

9   justified a significantly higher multiplier under both federal and Nevada law. *See e.g., Vizcaino,*

10  290 F.3d at 1051 n. 6 (citing cases approving multipliers as high as 19.6); *Steiner* v. *America*

11  *Broadcasting Co. Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier

12  of 6.85).

13     Between now and the close of settlement administration, Class Counsel anticipates devoting

14  additional hours to such tasks as communicating with Class Members, coordinating with the

15  Settlement Administrator and Defense Counsel, presenting arguments at the final approval hearing,

16  liaising with the *cy pres* recipients, and overseeing post-approval distribution. (Jones Dec., ¶49.) As

17  the litigation continues, the negative multiplier will increase until Class Members and the and the

18  *cy pres* recipients have received their checks. In sum, a lodestar cross-check confirms that the

19  negotiated fee award of $500,000.00 is reasonable and appropriate in this case.

20  **VI.    CLASS COUNSEL'S COSTS AND EXPENSES ACTUALLY INCURRED FOR**

21       **THE BENEFIT OF THE CLASS SHOULD BE APPROVED**

22     In common-fund settlements, Class Counsel is entitled to recover the reasonable expenses

23  incurred in prosecuting the litigation. FRCP 23(h); *Omnivision*, 559 F.Supp.2d at 1047. Class

24  Counsel also seeks reimbursement from the settlement fund in the amount of $7,358.58. The

25  Preliminary Order provided for up to $10,000.00 in costs. This is a difference of $2,641.42, which

26

27     [5] These rates fall well within the range approved in other class action litigation in this
district in recent years. *See, In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL
28  4586669, *2 (N.D. Cal. Sept. 24, 2018) (3.5 years ago; approving hourly rates ranging from
$275 for paralegals to $1,030 for senior partners as "high but within the range of reasonable").

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

will be returned to the net Settlement amount and, upon Court approval, will be included in the *cy pres* awards. (Jones Dec. at ¶¶52-54.)

These out-of-pocket expenses were incurred for the Class Members' benefit during this litigation and include filing fees, process service fees, deposition fees, photocopies, transcripts, document imaging, postage, and research. (*Id.*) Reimbursement is appropriate for the same reasons attorneys' fees should be paid out of the fund: all beneficiaries should bear their fair share of the costs of litigation, and these are the normal costs of litigation that clients traditionally pay. Reimbursement of reasonable out-of-pocket expenses that were "incidental and necessary to the representation of those clients" is appropriate. *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994). All of the costs sought were necessary in connection with the prosecution of this litigation and were made for the benefit of the Class and should, therefore, be approved in full.

## VII.    CONCLUSION

Based on the information and reasons provided herein, Plaintiffs respectfully request that the Court grant final approval of the Collective and Class Action Settlement and enter judgment, pursuant to the terms set forth in the Settlement Agreement.

Dated: March 5, 2025

Respectfully Submitted,

THIERMAN BUCK LLP

By:    /s/ *Leah L. Jones*
Mark R. Thierman
Joshua D. Buck
Leah L. Jones

GABROY │ MESSER
Christian Gabroy
Kaine Messer

HENDRON LAW GROUP, LLC
Lance J. Hendron

*Attorneys for Plaintiffs*

**THIERMAN BUCK, LLP**
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com; www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
FEES AND COSTS, CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am an employee of Thierman Buck Law Firm, and that on this 5th day of March, 2025 I served a true and correct copy of the forgoing **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COTS, REPRESENTATIVE PLAINTIFF CASE CONTRIBUTION AWARD, AND CLAIMS ADMINISTRATION COSTS** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Robert McCoy
Ryan M. Lower
George Verschelden

*Attorneys for Defendants*


                 */s/ Jennifer Edison-Strekal*
              An employee of Thierman Buck

THIERMAN BUCK LLLP
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

CERTIFICATE OF SERVICE